Mariano SALOMON, Petitioner,

v.

J. Edwin LaVALLEE, Superintendent, Clinton Correctional Facility, Respondent.

UNITED STATES of America ex rel. Victor COLON, Petitioner,

v.

Walter FOGG, Superintendent, Green Haven Correctional Facility, Respondent.

Nos. 76 Civ. 1640, 76 Civ. 4401 (GLG).

United States District Court, S. D. New York.

Feb. 16, 1979.

The Legal Aid Society, Federal Defender Services Unit, New York City, for petitioner Colon; by David J. Gottlieb, New York City, of counsel.

Hartman & Lerner, New York City, for petitioner Salomon; by Paul S. Brenner, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City, for respondents; by Charles A. Bradley, Rosalind S. Fink, Asst. Attys. Gen., Donald Sticklor, Deputy Asst. Atty. Gen., New York City, of counsel.

## OPINION

GOETTEL, District Judge:

In these habeas corpus proceedings, Mariano Salomon and Victor Colon challenge their state court convictions for possession and sale of one pound of cocaine. They allege that a conflict of interest rendered their joint representation by one attorney a violation of the Sixth Amendment right to effective assistance of counsel. A brief review of the state trial and of the proceedings on these habeas corpus petitions is· in order.

### I

Salomon and Colon were convicted after a jury trial in June, 1974. The State's evidence was primarily the testimony of an undercover police officer, who had arranged the sale by repeated telephone conversations with Colon. Tapes of five such conversations were introduced into evidence. Ultimately, the officer met Colon at a store in the Bronx where they waited for Salomon, who then arrived with a bag of cocaine. Salomon handed over the bag, professed no involvement in the deal, and Colon and the officer left the store to complete the transaction elsewhere. Colon was arrested after payment had been made for the narcotics, and Salomon was arrested thereafter inside the store.

■ At their trial, both petitioners were represented by one of their retained firm's attorneys. Neither petitioner presented any evidence, but by cross-examination and in summation, defense counsel argued that Colon had acted solely as an agent of the buyer-undercover officer.[1] Upon defense counsel's request, the court charged the

---

1. Under New York law, a defendant acting solely as an agent for the buyer of narcotics is not guilty of the sale, since he has aided the purchase, but not the sale. *People v. Roche*, 45 N.Y.2d 78, 407 N.Y.S.2d 682, 379 N.E.2d 200 (1978); *People v. Chong*, 45 N.Y.2d 64, 407 N.Y.S.2d 674, 379 N.E.2d 208 (1978). *See also People v. Lindsey*, 16 A.D.2d 865, 228 N.Y.S.2d 427 (2d Dep't 1962), aff'd, 12 N.Y.2d 958, 238 N.Y.S.2d 956, 189 N.E.2d 492 (1963).

jury on this proffered defense. Counsel's defense of Salomon consisted mainly of an "innocent bystander" approach, focusing on Salomon's disclaimers at the time of the transaction. As the Second Circuit stated on Salomon's previous appeal, "[t]he evidence against both defendants was strong, and the jury returned verdicts of guilty after deliberating for about three hours." *Salomon v. LaVallee*, 575 F.2d 1051, 1053 (2d Cir. 1978).

After raising the conflict issue without success on his state appeal,[2] Salomon filed this habeas corpus petition in federal court in 1976. Judge Pollack denied the petition on July 20, 1976, finding that Salomon had failed to show prejudice from the joint representation. On March 22, 1977, the Second Circuit remanded for a "consideration of the question of waiver"—*i. e.*, whether Salomon had expressly consented to the joint representation and waived any conflict that may have existed. Judge Pollack, on remand, again concluded that there was no showing of real prejudice, and denied the petition without explicitly deciding the waiver question.

On Salomon's second appeal to the Court of Appeals, the court, finding no explicit waiver on the record before it, remanded again for a consideration of whether the State could show lack of prejudice from the joint representation. *Salomon v. LaVallee*, 575 F.2d at 1055. The court noted that, in a series of federal criminal cases, it had held that, absent a waiver, the burden was on the United States to show lack of prejudice; but it declined to constitutionalize this rule and apply it to a state court conviction, at least until the record in the case had been supplemented. *Id.*

Colon's unsuccessful state appeal[3] did not explicitly raise the conflict issue, although

he did claim constitutional error resulting from the joint trial. While the first appeal in Salomon's habeas corpus action was pending, Colon filed his *pro se* petition in this Court in September, 1976. The petition asserted basically that Colon had been prejudiced by the joint trial. The State was directed to answer the petition.[4] Counsel for petitioner was thereafter assigned. On August 5, 1977, an amended petition on behalf of Colon was filed, with the State's consent, expressly asserting that the joint representation denied him effective assistance of counsel at trial.

By the time Colon filed his amended petition Salomon's second appeal to the Second Circuit was pending. Consequently, this Court held decision on Colon's petition in abeyance. When Salomon's case was remanded again, the two cases were joined for an evidentiary hearing in this Court.

Despite the Second Circuit's limited remand order in *Salomon*, at this hearing the State produced more evidence attempting to show a waiver by the petitioners of any prejudice that might arise from their joint representation. For the first time in these *notoriously extended proceedings*, the State produced the minutes of the state pretrial proceedings (said previously not to exist), during which various colloquies took place between counsel and the state trial court. In one instance, the minutes show a general reference to the problem presented by joint representation. At the time of the reference, the trial judge was being asked for an adjournment of the trial date, and she was informed by counsel that a plea was likely, and that no conflict in the interests of the petitioners had been evident during the plea bargaining. The judge responded that counsel must investigate the potential for a

---

2. Salomon's conviction was affirmed without opinion, *People v. Salomon*, 377 N.Y.S.2d 347 (1st Dep't 1975), and leave to appeal to the New York Court of Appeals was denied.

3. Colon's conviction was affirmed without opinion after Salomon's had been similarly affirmed, *People v. Colon*, 381 N.Y.S.2d 570 (1st Dep't 1975), and leave to appeal was denied.

4. *See* Rule 4, Rules Governing Proceedings Under Sections 2254 and 2255 of Title 28, United States Code. After three successive deadlines had passed, the State still had not answered the petition. Finally, on February 3, 1977, the Court held that State in default and directed the clerk to issue the writ. The State then moved to vacate its default, and the motion was granted.

conflict should the case go to trial, and that if one became apparent, the lawyers should inform her, and separate counsel would be appointed. Counsel were directed to report their findings in this regard by the date then set for trial. No further reference to the joint representation issue appears in the record of the trial.

In addition, the State has submitted in this proceeding the affidavit of the state trial judge, (now a United States District Judge), which states that her normal practice was to explore with criminal defendants any potential for conflict and to assure herself that the defendants consented to joint representation. Understandably, she has no specific recollection that she did so in this case. The assistant district attorney who tried the case also testified and stated that he was "pretty sure" that such a colloquy took place, although he could point to no specific point at which petitioners were questioned directly by the trial judge. An associate of defense counsel, who appeared for the defendants at the pretrial proceedings, testified that he discussed the conflict question with both clients on more than one occasion and that each had indicated his desire for joint representation. Both petitioners testified, however, that they were not so questioned, had trouble understanding English, and did not remember anyone pointing out to them that a conflict between their positions might arise at trial.

The remainder of the State's evidence at the hearing was devoted to proving a difficult negative—that petitioners suffered no prejudice resulting from their joint representation. The issue of prejudice, of course, is the core question in these cases, and will be considered after discussion of several preliminary issues.

## II

■ After the evidentiary hearing in this Court, the State, somewhat incredibly after over two years of reluctant litigation in the case, *see* note 4 *supra,* moved to dismiss Colon's petition for failure to exhaust state remedies on his claim of ineffective assistance of counsel. As indicated earlier, Colon did not explicitly raise the issue on his state appeal, but did challenge on constitutional grounds his joint trial. In the usual case, the State's motion might present an interesting question regarding analysis of whether the state courts were given an adequate opportunity to pass on the conflict of interest issue. In this case, however, such an investigation by this Court is unwarranted. First, Salomon had explicitly raised the issue on his state appeal, and there is no reason to expect that the state courts would have altered their view of the case for Colon's benefit. *See, e. g., Stubbs v. Smith,* 533 F.2d 64, 68–69 (2d Cir. 1976); *Layton v. Carson,* 479 F.2d 1275, 1276 (5th Cir. 1973). Second the State's extensive delay in asserting the exhaustion ground would itself be sufficient to support a discretionary decision not to dismiss on that ground. *United States ex rel. Graham v. Mancusi,* 457 F.2d 463, 467–68 (2d Cir. 1972). Finally, the State's motion must be considered close to frivolous in light of its prior consent to Colon's amending his petition, over eighteen months ago, to assert expressly the claim of ineffective assistance of counsel. For all of these reasons, the State's motion to dismiss Colon's petition for failure to exhaust state remedies will be denied.

■ A second preliminary issue this Court must consider is the evidentiary burden with which to measure petitioners' claims of prejudice. As to Salomon, the Second Circuit has apparently made a finding, although Judge Pollack explicitly did not rule on the question, that "there [was] no inquiry" at trial into the conflict issue, and hence no waiver by Salomon. *Salomon v. LaVallee,* 575 F.2d at 1055. This led the court to direct a shifting of the burden to the state, to show lack of prejudice. *Id. See, e. g., Kaplan v. Bombard,* 573 F.2d 708, 714 n.7 (2d Cir. 1978). With this "law of the case," it was conceivable that the State would produce evidence of waiver which would be effective against Colon, but not Salomon. Based on a more complete record, however this Court is satisfied that no formal allocution, in which the petitioners

were personally warned by the trial judge of the potential for conflict, occurred on the record at or before their trial.

It may well be, as the State contends, that the potential for conflict was discussed by the judge with the lawyers, and by defense counsel with petitioners, and that since no one saw a problem, the consent of the petitioners to joint representation was obtained. It is also true that petitioners' trial preceded the New York Court of Appeals' decision in *People v. Gomberg*, 38 N.Y.2d 307, 379 N.Y.S.2d 769, 342 N.E.2d 550 (1975), which required New York's trial judges to "ascertain, *on the record,* whether each defendant has an awareness of the potential risks involved [in joint representation] and has knowingly chosen it." (emphasis added). This, of course, was already the trial judge's established procedure. Apparently, the scheduling confusion and the talk of a plea bargain contributed to the failure to put such a formal allocution on the record; no doubt had the trial judge formally addressed the petitioners, such an agreement would have been forthcoming. Indeed, since defense counsel was retained, an effort to compel separate counsel could have infringed petitioners' Sixth Amendment right to be represented by the counsel of their choice. But based on the evidence presented in this proceeding, this Court cannot find a sufficient showing that each of the petitioners was advised explicitly of the inherent potential for conflict and of the possibility that separate counsel could be appointed, or that they, with this knowledge, willingly consented to be jointly represented.

From a legal standpoint, therefore, Colon and Salomon are in the same position. Consistent with the Second Circuit's opinion in *Salomon, supra,* and with this Court's finding as to Colon, the State is faced with the burden of showing a lack of prejudice to either of the petitioners arising out of the joint representation.

### III

The prospect of measuring "prejudice" resulting from joint representation of criminal defendants can be a difficult exercise in counterfactual history. Indeed, once a petitioner is able to demonstrate "some specific instance of prejudice, some real conflict of interest," some courts would end the inquiry there and not speculate whether independent counsel realistically would have made any material difference to the petitioners. *United States v. Carrigan,* 543 F.2d 1053, 1055, 1057 (2d Cir. 1977).

In this case, Judge Mansfield has already found that the positions of Colon and Salomon at their joint trial did ultimately present a theoretical conflict. *Salomon v. LaVallee,* 575 F.2d at 1055–56 (dissenting in part). Colon's defense that he was an agent for the undercover officer as buyer logically could imply that Salomon was the real seller and did tend to concede that some narcotic transaction took place; therefore, the defense prejudiced Salomon, who claimed complete innocence. Similarly, Salomon's defense that he was an innocent bystander was somewhat inconsistent with Colon's position, and viewed from an overall perspective, joint counsel was identifiably compromised in arguing these inconsistent factual positions to the jury.

If the language of *Carrigan, supra,* were to be taken seriously, this "identifiable" prejudice as found by Judge Mansfield would end the inquiry. The majority in *Salomon, supra,* however, in remanding to give the State an opportunity to show no prejudice, apparently contemplated some further consideration of what difference separate counsel could have made.[5] Clearly, the State cannot "disprove" what Judge Mansfield has identified as the inconsistent positions that created a conflict of interest, and so the State has attempted to show in

---

**5.** Curiously, although dissenting from the remand order, Judge Mansfield did not refrain from speculating on what alternative defenses might have been raised by independent counsel for Salomon, including one portraying Salomon "as an agent for Colon as the buyer." 575 F.2d at 1056. The parties before this Court agree that such a defense for Salomon was not supported by the record and moreover, would have been inconsistent with Salomon's disclaimer of knowledge of the transaction, for which there was slight record support.

this Court that independent trial counsel could not reasonably be expected to have done any better on behalf of these petitioners. This Court is not convinced that this is a productive approach, but in an effort to follow the Court of Appeals' remand order, will consider the State's argument.

The problem, of course, is that once the door is open to such speculation, the array of different scenarios can be endless. In the instant case, the State persuasively argues that in all probability, joint representation helped these petitioners rather than hurt them. If each had had separate counsel, the theoretical conflict described above concededly would not have existed, but at the same time, each petitioner's defense would have been more strongly asserted against the other. Colon's lawyer would have pointed a more vehemently accusatory finger at Salomon as the real seller, and Salomon's attorney would have asserted the same innocent bystander argument to the prejudice of Colon. So long as the petitioners were tried together, if these theoretical positions were pursued, each one's defense would "prejudice" the other, and if independent counsel were employed, each one's invigorated defense would probably have hurt the other more than it helped him. In some ways, then, joint counsel may have been a benefit to both. This is undoubtedly one thing that Judge Pollack had in mind when he found that Salomon could not make a sufficient showing of real prejudice to warrant invalidating his conviction.

Counsel in these proceedings, however, are not without their own theories of what could have happened with separate counsel. They argue that if Colon had asserted his agency defense more pointedly, then the assistant district attorney would have offered more tapes of conversations between Colon and the undercover officer, which portrayed previous narcotics transactions, in an effort to show knowledge and intent. The State says that these tapes would have destroyed Colon's defense. Salomon counters that if the additional tapes were introduced, he would have had a substantial

motion for a severance since the tapes were admissible against Colon but not against him.[6] Colon then argues that if a severance had been granted, he would have been better off, since petitioners would have then been able to negotiate separate plea agreements, something the District Attorney's Office would not otherwise agree to if petitioners could be tried together.

Undoubtedly, the speculation could go on. Under any realistic evaluation, the evidence against both petitioners was strong, and separate counsel or even separate trials probably would not have made a material difference in the outcome. This, however, is an answer to a substantially different question than that posed by the Second Circuit, namely, whether the State could show that the petitioners suffered no prejudice as a result of the joint representation as it occurred.

It is virtually impossible for the State affirmatively to show, "by a preponderance of the evidence," see United States v. Foster, 469 F.2d 1, 5 (1st Cir. 1972), cited with approval in United States v. DeBerry, 487 F.2d 448, 453–54 (2d Cir. 1973), a complete "absence" of prejudice resulting from joint representation. See Salomon v. LaVallee, 575 F.2d at 1055–56 (Mansfield, J., dissenting in part). Speculation on what would or would not have occurred with independent counsel simply cannot entirely negate an identifiable potential conflict no matter how negligible. It would be a rare case in which imaginative appellate counsel could not perceive some conflict between the positions of any defendants jointly tried. If the State had a burden to show a total lack of any disadvantage resulting from the joint representation, the Court would be hard put to find that it has met this virtually impossible standard. On the other hand, if the burden were on petitioners to show a "specific" and "real" conflict, with resulting material prejudice, this Court would be equally hardput to find one on this trial record. See, e. g., Smith v. Regan, 583 F.2d 72, 76 (2d Cir. 1978).

6. In fact, the trial judge held the tapes inadmissible because overly prejudicial to Salomon.

Judge Feinberg's opinion for the majority in Salomon's earlier appeal is susceptible of the interpretation that the State must show not only the absence of actual, specific prejudice but also the absence of any possible prejudice. Judge Mansfield's concurring and dissenting opinion impliedly agreed with this interpretation in concluding that the State could not possibly sustain its burden since there were potentially inconsistent defenses evidenced.[7] The majority did remand the case, however, lending support to an interpretation that the extent of the burden to be imposed on the State would not rule out the possibility of proof sufficient to uphold the convictions.

■ In this proceeding, the State *has* made a persuasive showing that no "actual conflict" was caused by the joint representation at petitioners' trial. *See United States v. Sheiner*, 410 F.2d 337, 343 (2d Cir.), *cert. denied*, 396 U.S. 825, 90 S.Ct. 68, 24 L.Ed.2d 76 (1969). The "possible prejudice" from the theoretically conflicting factual positions now purportedly seen in trial counsel's tactics was not stressed or even articulated well in his summation, and neither the trial judge nor the attorneys present in the trial court recognized any conflict in defense counsel's arguments at the trial. It is difficult to believe that the members of the jury would have considered petitioners' positions as conflicting under these circumstances, or that defense counsel suffered any damage to his credibility resulting from his arguments. The evidence against both petitioners was strong, and no affirmative defense case was presented. The State has shown here a lack of actual or real prejudice to the petitioners resulting from joint representation.

In this Court's view, even under the approach which shifts the burden to the respondent, no more could reasonably be required of the State. The impossible task of negating every possible speculation of "prejudice" simply cannot be the "burden"

which the Second Circuit intended to impose on the State in *Salomon, supra*. Indeed, it is difficult to imagine a case in which the State could make such an airtight evidentiary showing.

Because the State has succeeded in making a showing of a lack of real, specific or material prejudice which rises to constitutional dimension under the Sixth and Fourteenth Amendments, the petitions are denied.

SO ORDERED.

---

**7.** Subsequent to *Salomon*, Judge Mansfield indicated a somewhat different view of the extent of the burden to be imposed on the respondent and the kind of proof that would sustain it. *Smith v. Regan*, 583 F.2d 72, 77 (2d Cir. 1978)

(Mansfield, J.). Judge Feinberg's views of the law in this general area also appear to be changing. *Compare United States v. Sheiner*, 410 F.2d 337 (2d Cir.), *cert. denied*, 396 U.S. 825, 90 S.Ct. 68, 24 L.Ed.2d 76 (1969).