**Emilcar BERMUDEZ,**
**Petitioner-Appellee,**

v.

**Theodore REID, Superintendent, Fishkill Correctional Facility, and Robert Abrams, Attorney General of the State of New York, Respondents-Appellants.**

**No. 561, Docket 83–2272.**

United States Court of Appeals, Second Circuit.

Argued Nov. 21, 1983.
Decided April 19, 1984.

Phylis Skloot Bamberger, The Legal Aid Society, Federal Defender Services Unit, New York City, for petitioner-appellee.

Arlene R. Silverman, Asst. Atty. Gen. of the State of N.Y., New York City (Robert Abrams, Atty. Gen. of the State of N.Y., Melvyn Leventhal, Deputy First Asst. Atty. Gen., Gerald Ryan, George C. Perry, Asst. Attys. Gen., New York City, of counsel), for respondents-appellants.

Robert M. Morgenthau, Dist. Atty., New York County, New York City (Robert M. Pitler, Mark Dwyer, Donald J. Siewert, Asst. Dist. Attys., New York County, New York City, of counsel), as amicus curiae.

Before LUMBARD, MANSFIELD and KEARSE, Circuit Judges.

LUMBARD, Circuit Judge.

Petitioner-appellee Emilcar Bermudez, currently serving a five-to-ten year sentence pursuant to a New York State ("the State") conviction for second degree robbery, filed a petition for a writ of habeas corpus in the Southern District of New York in January, 1983. The petition was assigned to Judge Charles Stewart, who, on March 29, ordered the State to respond within 30 days. On July 28, 1983, after four months had elapsed and the State had still not responded despite repeated extensions and notices from the court, Judge Stewart entered a default judgment for petitioner, 570 F.Supp. 290. On August 12, the State moved to vacate the default judgment, which motion was denied on August 30. The State appeals from the default judgment and denial of the motion to vacate. We reverse the grant of a default judgment and remand to the district court for further proceedings.

I.

Emilcar Bermudez was convicted by a jury in New York County on July 31, 1979, of robbery in the second degree. The evidence at trial was that, with the help of a confederate, he punched one Kenneth Brettler in the stomach, placed both hands on him, ripped his watch from his left wrist and pulled his wallet from his back pocket. In view of his record, which included two prior felony convictions for attempted robbery, and an assortment of misdemeanor convictions, including one for attempted assault, Judge Levy sentenced him to an indeterminate prison term with a minimum of five and a maximum of ten years. Bermudez's conviction was unanimously affirmed by the Appellate Division, and leave to appeal to the Court of Appeals was denied on January 22, 1982. A motion to set aside the verdict was also denied, as was a motion to vacate the judgment. Leave to appeal the latter ruling to the Appellate Division was denied on December 2, 1982.

Bermudez then took the much travelled road to the federal court and sent a petition for habeas corpus to the Southern District Court, which was recorded as filed on January 25, 1983. The petition alleged eight

different grounds for relief, including ineffective assistance of counsel. On March 29, 1983, Judge Stewart entered an order directing the respondent to answer within 30 days. A copy of that order was mailed on the same day to the office of the New York Attorney General, who, under state law, was responsible for representing named respondent, the warden of Fishkill Correctional Facility. On May 2, no answer having been received, petitioner moved for summary judgment on the basis that an answer was overdue.

On about May 9, the Attorney General's office made the first of numerous requests for extensions of time to reply to Bermudez's petition. To shorten that long story, which we relegate to a footnote [1], after the Attorney General had failed to meet several due dates, Judge Stewart, without notice to the Attorney General, entered a default judgment on July 28, 1983, on the basis of the claim of ineffective assistance of coun-

sel.[2] The court held no hearing to inquire into the substance of Bermudez's claim; it directed that Bermudez be released unless he was retried within 60 days. This time the Attorney General responded by motion, dated August 12, to vacate the default judgment, citing Fed.R.Civ.P. 55(c), 60(b)(1) and 60(b)(6), together with a proposed answer to Bermudez's eight-point petition, and the state court record. The district court denied the motion, with opinion, on August 30. On September 27, we stayed the district court judgment pending appeal. 720 F.2d 748.

Persuaded by the transcendent consideration that the federal courts should intervene in the incarceration of state prisoners only after being convinced, by an evidentiary hearing, that there has been a violation of a petitioner's constitutional rights, we reverse the judgment and direct further proceedings, upon notice to the respondent.[3]

---

**1.** The Assistant Attorney General assigned to the case, citing his office's heavy workload, requested a "brief" extension until May 20 for the State to file its answer. The extension was granted, and petitioner's motion for summary judgment was denied, with leave to renew.

On May 27, still with no answer forthcoming, petitioner renewed his motion for summary judgment. Having heard nothing from the State, Judge Stewart's chambers called the Assistant on June 3. The Assistant, despite the fact that he had not seen fit to contact the court directly to respond, acknowledged that he knew that Bermudez had renewed his motion for summary judgment. He requested a further extension of time, until June 9, for the State to file its response. Judge Stewart again granted an extension, but advised the Assistant that his failure to communicate with chambers about the overdue answer was "deemed troubling," and that if there was any doubt as to his ability to adhere to the new June 9 deadline, he should notify the court.

On June 16, Judge Stewart still had not received a response from the State. Chambers again called the Assistant, who offered no explanation for his failure to respond, but requested a further extension of time until June 24. The extension was granted, but the Assistant was warned that the new June 24 deadline was the "final" date by which he could file an answer. On July 28, with still no word from the State, Judge Stewart entered a default judgment, pursuant to Fed.R.Civ.P. 55.

**2.** As the district court concluded that the petition need state only one facially valid ground

for relief to justify the granting of the writ by default, it did not discuss the remaining seven grounds alleged by petitioner.

In finding that the "ineffective assistance of counsel" claim was facially valid, the court relied on one portion of the facts alleged in the petition in support of that claim, which read: "[Defense counsel] failed to take the time to review and prepare both the law and facts relevant to the defense and failed to employ at trial basic principles of criminal law and procedures." Although our holding that an evidentiary hearing is required prior to the granting of a habeas writ is not limited to petitions containing such conclusory allegations as this, the obvious weakness of petitioner's claim well illustrates the dangers of granting a writ without any inquiry into its merits. This is especially so where the conclusory allegations concern alleged incompetence of counsel, a claim that is easily asserted but usually turns out to reflect misinformation or simply unsuccessful trial tactics.

**3.** In addition to opposing respondent's attack on the default judgment on its merits, petitioner argues that as respondent failed to file a notice of appeal of the August 30 order denying its motion to vacate, the propriety of that denial is not properly before this court. As we are reversing only the underlying default judgment, and as there appears to be no dispute that on August 24, respondent timely filed a notice of appeal from that judgment, we need not reach the question whether the notice of appeal from

■ We fully agree with the district court that the State's disregard of the court's orders was inexcusable. By the time the default judgment was entered on July 28, 1983, four months had elapsed since respondent was first ordered to answer. During those four months, respondent secured three extensions from the court, all requested after respondent's deadline had run. Despite repeated instruction to respondent to notify the court of any difficulties in meeting its deadline, two of the three requests came only after the court had contacted respondent to inquire about the overdue response. Over a month elapsed between the "final" deadline and the entering of default judgment, during which time the court never heard from respondent. During all this time, the only justification ever offered for the repeated failures to attend to petitioner's case was that the Attorney General's office was overburdened with work.[4]

It is also true that in civil cases, where a party fails to respond, after notice the court is ordinarily justified in entering a judgment against the defaulting party, *see* Fed.R.Civ.P. 55(b)(2), and the court has considerable latitude in deciding whether to require plaintiff to produce evidence in support of the claims before entering such a judgment. *See generally* 10 C. Wright, A. Miller, M. Kane, *Fed. Pract. & Proced.* §§ 2685, 2688 (1983).

■ But we cannot ignore the fact that a habeas petition is not an ordinary civil proceeding. The guilt of the petitioner Bermudez has been adjudicated in a state court by the verdict of a jury. This conviction has been unanimously affirmed by an appellate court. In addition, two post-conviction motions have been considered and denied by the state trial court. Whatever may be the merits of Bermudez's claims, there is presumption that the state court judgment, pursuant to which he has been imprisoned, is valid until there is some showing that by constitutional standards it is not. 28 U.S.C. §§ 2241(c)(3), 2254(a); *see Townsend v. Sain,* 372 U.S. 293, 312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770 (1963).

■ That fact does not justify denying him, as the State's actions have done here, a prompt opportunity to meet his burden of proof. But in deciding what means are appropriate to the district court to secure that opportunity, we cannot ignore the reality that most habeas petitioners have been convicted of serious offenses, and considerably less than five percent of petitions result in the granting of the writ.[5] Under the circumstances, were district courts to enter default judgments without reaching the merits of the claim, it would be not the defaulting party but the public at large that would be made to suffer, by bearing either the risk of releasing prisoners that in all likelihood were duly convicted, or the costly process of retrying them.[6] In this respect, default in habeas proceedings differs from default in other civil cases, except those in which judgment is sought against the United States. In the latter cases, judgment by default cannot be obtained unless the claimant first establishes "his claim or right to relief by evidence

the judgment should (as respondent argues) encompass subsequent and related orders entered prior to perfection of the appeal.

**4.** We note that the Attorney General's inattention to this habeas petition is not an isolated incident. *See e.g. Simmons v. Dalsheim,* 543 F.Supp. 729, 733 n. 1 (S.D.N.Y.1982), *aff'd,* 702 F.2d 423 (2d Cir.1983); *Salomon v. LaVallee,* 465 F.Supp. 148, 150 n. 4 (S.D.N.Y.), *rev'd on other grounds sub nom. Colon v. Fogg,* 603 F.2d 403 (2d Cir.1979).

**5.** *See, e.g.,* Annual Report of the Director of the Administrative Office of the United States Courts 132 (1971) (96% of all federal habeas petitions are unsuccessful); Shapiro, "Federal Habeas Corpus: A Study in Massachusetts," 87 *Harv.L.Rev.* 321, 334 (1973) (confirming roughly same percentage for the District of Massachusetts over the three-year period from 1970–72).

**6.** In addition to the financial costs of a new trial, it is frequently impossible to reassemble, several years after the original trial, the witnesses and evidence which were available at the first trial.

■

satisfactory to the court," Fed.R.Civ.P. 55(e), since otherwise the taxpayers at large would have to bear the cost of a judgment that comes as a "windfall" to the individual claimant. *Campbell v. Eastland,* 307 F.2d 478, 491 (5th Cir.1962), *cert. denied,* 371 U.S. 955, 83 S.Ct. 502, 9 L.Ed.2d 502 (1963). We think the same principles should *a fortiori* govern here, where the potential cost to the public from a "windfall" judgment is far greater.

■ It follows that we think the district court should, at the least, have held a hearing to review evidence in support of petitioner's claims.[7] Furthermore, although we agree with the court's conclusion that it was not required by Rule 55(b)(2) to provide three days' notice to respondent in this case,[8] we think henceforth, as a matter of public policy, such notice should always be given prior to a hearing in a habeas case, even where not required by Rule 55(b)(2). Notice here is not to protect the State's narrow interests as litigant—interests that, by its inexcusable conduct, we would readily agree the State forfeited—but to benefit the public at large, by ensuring that habeas petitions are granted only when the court is satisfied of their merits, on the basis of the best obtainable evidence. In addition, where a habeas claim is based on alleged incompetence of counsel, we read *United States v. Dukes,* 727 F.2d 34, 41 n. 6 (2d

Cir.1984), to require notice to be given to trial counsel as well, to afford an opportunity to counsel to testify or present evidence.

Finally, we note that where, as here, the State's failure to respond appears to be the result of an individual attorney's negligence and disregard of professional obligations, the rules of this court and the district court provide for the reporting of such misconduct to the Committee on Admissions and Grievances and the Chief Judge, respectively, for investigation and discipline. *See* Rule § 46(h) of the Rules of the United States Court of Appeals for the Second Circuit; General Rule 4(f) of the Local Rules for the United States District Court, Southern District of New York.

We reverse the judgment of the district court, and remand for further proceedings consistent with this opinion.

---

7. Although we have required a formal evidentiary hearing here, we do not mean to preclude the use of sworn affidavits and written documentary proof, in lieu of an oral hearing, to ascertain the merits of a petitioner's habeas claim in other cases where appropriate. However, where, as here, the allegations concern incompetence of counsel, we doubt it would ever be appropriate to grant the petition without an evidentiary hearing, at which trial counsel has an opportunity to testify and present evidence. *See United States v. Dukes,* 727 F.2d 34, 41 n. 6 (2d Cir. 1984).

8. The court determined that as there had been no "appearance" by respondent in this action, the usual three-day notice requirement of Fed. R.Civ.P. 55(b)(2) was not implicated. We agree that the single letter initiated by the Assistant asking for an extension did not constitute an appearance, *see Rutland Transit Co. v. Chicago Tunnel Terminal Co.,* 233 F.2d 655 (7th Cir. 1956), and thus that Rule 55(b)(2) did not require notice by its terms.