Charles Anthony **GULLIVER**, Plaintiff,

v.

Stephen **DALSHEIM**, etc., et ano., Defendants.

No. 81 Civ. 2444 (WK).

United States District Court, S.D. New York.

April 24, 1984.

The Legal Aid Soc., Crim. Appeals Bureau, Federal Defender Services Unit by Barry T. Bassis, Associate Appellate Counsel, New York City, for plaintiff.

Office of Dist. Atty., County of Westchester by Terry Jane Ruderman, Asst. Dist. Atty., White Plains, N.Y., for defendants.

## MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

On November 4, 1983—by reinstating an order we had originally entered on February 26, 1982 [1]—we granted petitioner's writ of habeas corpus "unless, within a reasonable period not to exceed ninety days, the State grants the petitioner leave to appeal from his conviction." *Gulliver v. Dalsheim* (S.D.N.Y.1983) 574 F.Supp. 111. Having neither appealed from that order or taken any action to comply with it, the respondent now moves for two types of relief: (a) for leave "out of time to file a notice of appeal;" and (b) to extend the time for compliance with the order in the event leave to appeal be denied or an appeal should ultimately be unsuccessful. With reluctance, we grant both forms of relief.

## BACKGROUND

This case has had an extraordinary procedural history. Having been convicted of burglary in Westchester County, and having, to our then satisfaction, exhausted his state remedies, petitioner brought the instant writ to challenge his conviction. Finding that the conduct of the lawyer who had presented petitioner's case to the Appellate Division had utterly failed to meet the constitutional standards established by *Anders v. California* (1967) 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493, we granted the above specified relief. We then observed in a footnote that much time and trouble could be saved if the State should simply let petitioner's current highly competent counsel re-present his case to the Appellate Division. Thus, we observed (in footnote 3):

> Although this is clearly not a proper consideration in determining whether constitutional rights have been violated, we cannot help but observe that both lawyers' and judges' time would be conserved by granting rather than denying the writ. Both parties are now represented by exceptionally able counsel. Should the writ be denied, petitioner's counsel will feel compelled to raise all questions presently before us in the Court of Appeals and then—depending on the outcome—perhaps in the state courts as well. Upon granting of the writ, on the other hand, a much simpler appeal by the same lawyers can, at the State's option, be laid forthwith before the Appellate Division of the Supreme Court.

The State did not adopt the suggested "option," but timely filed a notice of appeal. The Court of Appeals did not reach the merits but, considering "an issue not addressed in the parties' briefs," remanded the case for us to consider the effect of the Supreme Court's intervening decision in *Rose v. Lundy* (1982) 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379. The Court also directed us to consider—in light of *Martinez v. Harris* (2d Cir.1982) 675 F.2d 51, another intervening decision—the State's contention that the petitioner "has yet to give the state courts a proper opportunity to consider the merits of his claim." The panel deciding the case retained jurisdiction. *Gulliver v. Dalsheim* (2d Cir.1982) 687 F.2d 655.

On remand we found (in an unpublished memorandum) that the *Rose v. Lundy* question had been disposed of by stipulation of counsel, and that the *Martinez* question need not be addressed because the State upon remand had formally agreed not to oppose any application for reargument that petitioner might make to the Appellate Division. We accordingly held, in effect, that whatever might be said about petition-

---

**1.** Our memorandum and order of February 26, 1982 not having been published, we annex it as an Appendix.

er's prior attempts to exhaust state remedies, a new remedy was now available of which the petitioner should avail himself before continuing his quest for federal relief; and we entered an order dismissing the writ, without prejudice to its renewal should a federal question remain after the newly proffered state remedy had been pursued.

It then seemed to us—as it still seems to us—that petitioner could, by availing himself of the State's formal offer not to oppose his application for reargument before the Appellate Division, achieve everything that could be accomplished by obtaining affirmance of our original order; and that further federal litigation would be superfluous. However, petitioner did not so view the matter and filed a timely appeal to our Court of Appeals, which brought the matter back to the panel which—as above noted—had retained jurisdiction. The Court of Appeals was no more impressed than had been the petitioner with our suggestion that time and trouble could be saved if the parties would simply go before the Appellate Division and find out whether competent counsel could accomplish anything in that court. The matter was (in an unpublished memorandum) remanded for us to determine what the *Martinez* Court had meant by its decision. As it had done on the previous appeal, the panel retained jurisdiction. As indicated at the outset of this opinion, on November 4, 1983 we found *Martinez* to be inapplicable and reinstated our order of February 26, 1982.

When thirty days had passed without any appeal being taken, we happily concluded that the parties had finally decided to abandon the fancy footwork and submit the matter to the Appellate Division for a decision on the merits. Such turned out to be a vain hope. Neither party took any action whatever with respect to our decision. On February 8, 1984 petitioner submitted a proposed order reciting the State's

2. *See Bermudez v. Reid,* 733 F.2d 18 (2d Cir.1984).

3. We note that were it not for the mentioned considerations of federalism, we would unhesitatingly rule that respondent had shown no ex-

inactivity and providing for the expungement of petitioner's conviction. This resulted—ultimately—in the motion now before us.

## DISCUSSION

At first blush, it appeared to us that we had no power to grant respondent's request to extend the time for appeal. Rule 4(a) of the Federal Rules of Appellate Procedure would seem unambiguously to fix thirty days as the limit of a party's right to appeal, and an additional time not to exceed forty days within which a district court may extend that limit for "excusable neglect or good cause." However, respondent calls our attention to *Matter of Orbitec Corporation* (2d Cir.1975) 520 F.2d 358, where the Court of Appeals—by way of dictum—indicated that there might be circumstances in which the apparently unambiguous mandate of Rule 4(a) could be circumvented. Speaking through Judge Friendly, the Court—after discussing the apparently unambiguous language of Rule 4(a)—observed (at 361):

> To be sure, this has the consequence that no appeal can be taken unless something is done within 30 days after expiration of the period prescribed by the first paragraph no matter how excusable the neglect *(unless the neglect was of the sort that would sustain a motion under F.R.Civ.P. 60(b)(1)),* but the language is clear and the policy in favor a short and definite limitation on the taking of appeals is very strong. [Emphasis added.]

We cannot be certain of exactly what discretion the emphasized language was intended to confer. Nor can we know whether the Court will wish to convert this dictum into binding law. However, in light of the high priority the concept of federalism gives to the sanctity of state judgments,[2] we think it appropriate that the Court of Appeals, rather than we, decide whether or not the suggested exception should apply to the case at bar.[3] We ac-

cusable neglect. Counsel for respondent has set forth its position as follows:

> [I]t was our understanding, perhaps erroneous, that since the appeals court retained jurisdiction of this case a scheduling order and

**1544**

cordingly extend respondent's time to appeal for a period of ten days after the date of this order.

■ With respect to the second branch of the State's motion, the same considerations of federalism prompt us at this time to deny petitioner's application to expunge his conviction. Our original order (which was reinstated on November 4, 1983) provided that the writ would be granted unless within ninety days "the State *grants* petitioner leave to appeal." (Emphasis added.) We also observed that petitioner's then counsel had agreed to "prosecute" an appeal before the state court. Respondent now takes the position, in effect, that this only meant that the State should cooperate with any steps petitioner might take to perfect a new appeal. The language is at best ambiguous, and we now rule that the conviction shall be expunged[4] only if, despite good faith efforts on petitioner's part, an appeal to the Appellate Division shall not have been perfected within ninety days of any of the following events: (a) the passage of eleven days from the entry of

this order without the respondent having filed a notice of appeal to the Court of Appeals; (b) an order of the Court of Appeals dismissing respondent's appeal; or (c) an order of the Court of Appeals affirming our order of November 4, 1983.

SO ORDERED.

## APPENDIX
## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Justice.

The only substantial issue presented on this writ is whether petitioner had adequate appellate counsel. As to that, our review of the state trial record leaves us with the distinct impression that, while appellate counsel most certainly did not have a sure case for reversal, a successful appeal was by no means out of the question. In light of the time of day and the necessarily hurried circumstances, there was a close case of identification; and the prosecutor concededly committed a series of errors (e.g., stating facts not in evidence, vouching for the credibility of his witnesses, and improperly impugning the character of petitioner's mother who was called as an alibi witness[1]), which errors, al-

---

eventual disposition would be forthcoming from them *i.e.*, the three-judge panel. Stated otherwise, in as much as the filing of a notice of appeal is quintessentially a procedure to being [sic] a matter within the ambit of a given appellate court's jurisdiction, the specific retention of the same (jurisdiction) would obviate the need to file a new notice of appeal.
Letter of March 14, 1984 of Assistant District Attorney Terry Jane Ruderman ("Letter") at p. 1. In support of this erroneous view, counsel for respondent has cited state appellate court procedures and has further referred to "a November 10, 1983 discussion with [a staff member] of the Court of appeals Clerk's Office," Letter at p. 1. Counsel for petitioner has advised us, in his letter of March 23, 1984 (at p. 1, fn. *) of his own conversations with two members of the Court of Appeals Clerk's Office, both whom recalled November conversations with counsel for respondent, and both of whom denied giving the above advice. As this latter is consistent with the practices of our Court of Appeals, we give it credence. On the question of whether or not counsel for respondent's misunderstanding of federal procedures or her reliance on those of the state courts is "excusable," we note, first, that ignorance of the law is generally not an excuse for competent, experienced counsel; second, that any familiarity with the Federal Rules of Civil and Appellate Procedure

would at the very least have shaken the position here urged; and third, that the history of this very action should have indicated that a notice of appeal, even after retention of jurisdiction by a panel of the Court of Appeals, was necessary and appropriate. We further note, however, that petitioner on oral argument specifically admitted that he has not been prejudiced by the State's delay in appealing.

4. We reject respondent's suggestion that expunging the conviction would not be appropriate even if an ultimately finalized order should be defied or ignored by the State. *See Mizell v. Attorney General of the State of New York* (2d Cir.1978) 586 F.2d 942, 948, and Judge Nickerson's subsequent order expunging the conviction there involved.

1. The State argues that the impropriety in the mother's cross-examination constituted error of form rather than substance, in that the prosecutor could properly have confronted her with certificates of her prior convictions. This is not necessarily so. In the first place, certificates of 20-year-old convictions might not have been available; and in the second place, our personal experience with "rap sheets" does not permit us to preclude the possibility that the prosecutor— although presumably acting in good faith— might have been in error as to the existence of such convictions.

though recognized as such by the trial court, were not effectively neutralized.

We are advised, however, that assigned appellate counsel nevertheless told petitioner that the appeal was hopeless and, in effect, asked petitioner's instructions as to how to proceed. The brief such counsel ultimately filed seems to us clearly to convey to the Court the idea which the attorney specifically conveyed to his client—i.e., that the appeal was hopeless and the brief pro forma.[2]

In *Anders v. California* (1967) 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493, the Court considered the nature of the representation owed by appointed appellate counsel to indigent clients. It there stated (at 744, 87 S.Ct. at 1400):

> "The constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an *active advocate* in behalf on his client...." (Emphasis added.)

See also *High v. Rhay* (9th Cir.1975) 519 F.2d 109, 112 (Lumbard, J., sitting by designation).

We conclude that petitioner failed to receive such active advocacy before the Appellate Division of the New York Supreme Court.[3] We accordingly grant the writ unless, within a reasonable period not to exceed ninety days, the State grants petitioner leave to appeal from his conviction. Petitioner's counsel before us having indicated his willingness to prosecute such appeal, and the Court being advised that petitioner is satisfied with such counsel's representation, there is no need for the State to appoint counsel on petitioner's behalf.

SO ORDERED.

Dated: New York, New York

February 26, 1982

---

**2.** In particular, one of the questions presented—at petitioner's request—was the excessiveness of the sentence. We are advised by the Assistant District Attorney that the New York Appellate Division takes very seriously, and frequently exercises, its power to reduce sentences. Against that background, we find quite shocking the off-hand manner in which the subject was approached in this case. The entire appellate argument on this point was as follows:

> "The maximum sentence that might have been imposed is 15 years. The sentence imposed is 80% of the maximum allowable. The weakness of the prosecutor's case, the recommendations of the neighborhood people, and the defendant's deportment and his honorable discharge should have had a greater influence on the sentence. A minimum sentence of 3 to 6 years would have been the appropriate sentence under the circumstances of this case."

There is nothing to suggest who the "neighborhood people" may have been and what they may have said, or what military service may have preceded petitioner's "honorable discharge." Indeed, there is nothing to suggest that petitioner's appellate counsel had any real basis for his rather presumptuous suggestion that a 3 to 6 year term would have been "appropriate."

**3.** Although this is clearly not a proper consideration in determining whether constitutional rights have been violated, we cannot help but observe that both lawyers' and judges' time would be conserved by granting rather than denying the writ. Both parties are now represented by exceptionally able counsel. Should the writ be denied, petitioner's counsel will feel compelled to raise all questions presently before us in the Court of Appeals and then—depending on the outcome—perhaps in the state courts as well. Upon granting of the writ, on the other hand, a much simpler appeal by the same lawyers can, at the State's option, be laid forthwith before the Appellate Division of the Supreme Court.