**Billy Ray HALE, Appellant,**

v.

**A.L. LOCKHART, Director, Arkansas Department of Correction, Appellee.**

No. 89–1534.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 12, 1990.

Decided May 10, 1990.

546

Daniel D. Becker, Hot Springs, Ark., for appellant.

Olan W. Reeves, Little Rock, Ark., for appellee.

Before ARNOLD and BOWMAN, Circuit Judges, and HUNTER,* District Judge.

BOWMAN, Circuit Judge.

Billy Ray Hale, an inmate of the Arkansas Department of Correction, is currently serving five concurrent life sentences and an additional concurrent twenty-year term of imprisonment after pleading guilty to one count of first-degree murder, four counts of aggravated robbery, and one count of battery. As a result of the plea

* The HONORABLE ELMO B. HUNTER, Senior United States District Judge for the Western District of Missouri, sitting by designation.

negotiations, the original capital felony murder charge filed against Hale was reduced to first degree murder, thereby reducing the maximum available penalty from death to life imprisonment. After exhausting his state remedies, Hale filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1982). The petition was denied by the District Court[1] and Hale now appeals.

Hale argues that (1) the lapse of three years between the date he filed his habeas petition and the date of the final order denying and dismissing the petition constitutes a denial of due process; (2) his trial counsel was ineffective; (3) his guilty plea was involuntary; and (4) procedural defects render the plea and sentencing hearing "null and void." We affirm the judgment of the District Court denying Hale habeas relief.

## I.

Hale filed his habeas petition on November 25, 1985 and the petition ultimately was denied and dismissed on November 22, 1988. Hale claims that the lapse of almost three years between the date he filed his habeas petition and final disposition by the District Court constitutes a denial of due process. The procedural path of Hale's habeas petition was long, and we relegate a detailed chronology to a footnote.[2] Specifically, Hale argues that a seven-month delay by the state in producing a transcript

and the deliberate pace of the District Court in issuing its rulings combine to constitute an unconstitutional delay in processing his habeas petition and require that we order the writ to issue. We disagree.

We note at the outset that no court has ordered a habeas writ to issue solely because of delay. Those cases that have suggested that such a remedy theoretically may be available have done so in the context of habeas petitioners' seeking default judgments against the state or other responding party. See, e.g., Bermudez v. Reid, 733 F.2d 18 (2d Cir.) (reversing the district court's entry of a default judgment in petitioner's habeas case even though the state's repeated disregard of the district court's orders to respond to the petition was "inexcusable"), cert. denied, 469 U.S. 874, 105 S.Ct. 232, 83 L.Ed.2d 161 (1984); Ruiz v. Cady, 660 F.2d 337 (7th Cir.1981); 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 55.05[6] (2d ed. 1988). We therefore separate Hale's claim into a discussion of any delay caused by the District Court and that caused by the state.

■ Hale's contention that delay caused by the District Court entitles him to habeas relief is unpersuasive and unsupported by authority. To hold that undue delay by a federal district court in collaterally reviewing a state conviction renders the state conviction unconstitutional would be illogi-

1. The Honorable Elsijane T. Roy, Senior United States District Judge for the Eastern District of Arkansas.

2. Hale originally filed his petition pro se; counsel was appointed on July 11, 1986. After a search through county court files uncovered the court reporter's record of Hale's guilty plea hearing, the state moved for a court order to have the record transcribed. This order was entered July 30, 1986. Due to a number of circumstances, including difficulty locating the court reporter and illness in the reporter's family, the record of the hearing was not delivered to the reporter until sometime in December 1986 and she did not complete the transcription until February 12, 1987.

New counsel was appointed for Hale on December 17, 1986. On January 20, 1987, counsel filed a motion for peremptory issuance of the writ because of the delay in filing the transcript. The Magistrate held a hearing on this motion on

February 17, 1987, at which he heard testimony from the attorney general's office regarding the delay in producing the transcript. The Magistrate recommended that Hale's motion for peremptory issuance of the writ be denied and the District Court entered an order adopting the Magistrate's findings and denying the motion on April 30, 1987. On October 5, 1987, the Magistrate held a hearing on the merits of Hale's habeas petition. The Magistrate entered a recommendation on March 1, 1988, that relief be denied and, on August 9, 1988, the District Court ordered that the requested relief be denied. In its order, the District Court directed that one issue not specifically addressed by the Magistrate be briefed by both sides. On November 1, 1988, the Magistrate recommended that relief be denied as to this final issue and, on November 22, 1988, the District Court entered its order denying relief.

cal and would subvert the purpose of section 2254, which simply provides a federal forum in which state prisoners may contest the constitutionality of their convictions and sentences. Such a holding also would do extreme violence to our federal system. We therefore categorically reject the notion that a state prisoner may become entitled to federal habeas relief merely because a federal district court is slow in adjudicating his collateral attack on his state conviction.

In any event, we see no undue delay here caused by the District Court. The court carefully considered each of Hale's claims and at one point remanded the case to the magistrate for additional briefing and findings. This is exactly the kind of careful review that habeas petitions warrant and should not now be complained of in an attempt to persuade this Court to issue the writ.

■ Hale further claims that the seven-month delay attributable to the state's inability to produce the transcript of his guilty plea hearing is a violation of his due process rights by the state and requires the writ to issue. We disagree. Hale cites *Fay v. Noia*, 372 U.S. 391, 400, 83 S.Ct. 822, 828, 9 L.Ed.2d 837 (1963) (quoting *Secretary of State for Home Affairs v. O'Brien*, [1923] A.C. 603, 609 (H.L.)), in which the Court states that the writ of habeas corpus must be construed to afford "a swift and imperative remedy in all cases of illegal restraint or confinement." He also relies heavily on this Court's statement in *Jones v. Shell*, 572 F.2d 1278, 1280 (8th Cir.1978), that the writ "is reduced to a sham if the trial courts do not act within a reasonable time." Hale's reliance on *Jones*, however, is overstated. In *Jones*, this Court found a flagrant violation of its mandate when the district court delayed fourteen months in processing a claim after remand with instructions. We found that much of the blame lay with the state, which waited seven months to file a responsive pleading and then asserted the defense of failure to exhaust state remedies. We further found that the delay "denied petitioner constitutional due process," but did not hold that this denial of due process

required the writ to issue. *Id.* Instead, we directed the state to respond to petitioner's allegations and to show cause why the case should not be remanded for an immediate review by the district court.

The remedy requested by Hale is extreme. Were we to grant Hale's habeas petition without reaching the merits, it would be "the public at large that would be made to suffer, by bearing either the risk of releasing prisoners that in all likelihood were duly convicted, or the costly process of retrying them." *Bermudez*, 733 F.2d at 21. We do not need to decide, however, whether particularly egregious conduct by the state could ever merit such a remedy to determine that it is inappropriate in the present case. The Magistrate found, and the District Court agreed, that "the facts of this case do not warrant such a drastic resolution." Magistrate's Proposed Findings and Recommendations at 5. The delay in Hale's case was caused by a recalcitrant court reporter and an overworked assistant attorney general. The record "does not show the kind of conduct by the State that would give rise to a presumption of illegal confinement or a violation of due process." *Id.* We agree with that assessment and reject Hale's claim that the delay in his case amounts to a due process violation.

Hale's argument that we grant his petition for writ of habeas corpus on the basis of a seven-month delay by the state in producing a transcript therefore must fail.

II.

Turning to the merits of Hale's petition, Hale challenges his guilty plea on the grounds that his counsel was ineffective because he misadvised Hale regarding his parole eligibility and he failed to (1) move to transfer the proceedings to juvenile court; (2) challenge the legality of Hale's arrest; and (3) move to suppress Hale's confession. To succeed on any one of these claims, Hale must show that his counsel's conduct fell below the standard of "reasonably effective assistance" established in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), and that "there is a

reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

■ Hale contends that his attorney incorrectly advised him that if he pleaded guilty his sentence would be twenty-one years to life and he would be eligible for parole in seven years.[3] Both Hale and his mother testified at the evidentiary hearing that they received this misinformation regarding Hale's parole eligibility from Hale's attorney. The attorney testified that he did not give Hale or his mother any information regarding parole eligibility and that he advised Hale to plead guilty so as to avoid the death penalty. Believing, in reliance on *Hill v. Lockhart*, 731 F.2d 568, 571 (8th Cir.1984)[4], that erroneous advice concerning parole eligibility could not rise to the level of constitutionally inadequate legal performance, the Magistrate did not make a factual finding as to whether the alleged misinformation was actually given to Hale by his attorney. The Magistrate went on to find, however, and the District Court agreed, that even if counsel's conduct was deficient, Hale was not prejudiced by the error because it was not a significant factor in his decision to plead. Hale faced the death penalty if he proceeded to trial and the court found "[p]etitioner's testimony that he pleaded primarily because of the parole advice is not credible." Magistrate's Recommended Findings of Fact and Conclusions of Law at 7.

This Court recently has held that, in specific instances, erroneous advice concerning parole eligibility may constitute ineffective assistance of counsel. *Hill v. Lockhart*, 877 F.2d 698 (8th Cir.1989), *aff'd on rehearing en banc*, 894 F.2d 1009 (1990). The holding in *Hill*, however, was narrow, and rested primarily on the district court's finding that petitioner pleaded guilty as a direct consequence of his counsel's errone-

ous advice and that, but for this advice, the outcome of the plea process would have been different. *Hill*, 894 F.2d at 1010. This clearly is not the situation in the present case. Had Hale insisted on going to trial, he ran the risk of being sentenced to death. His attorney stated this was the principal reason he counseled Hale to plead, and the District Court found it was the primary reason Hale chose to enter a guilty plea. We cannot say that the court's finding in this regard was clearly erroneous. We therefore hold that the alleged misstatements concerning parole made by Hale's attorney, assuming they were in fact made, did not constitute ineffective assistance of counsel as Hale was not prejudiced by his attorney's error.

■ Hale claims that his counsel was ineffective for failing to move to transfer his case to juvenile court. We do not agree. At the time Hale committed the offenses for which he eventually was convicted, he was sixteen years of age, and Ark.Stat.Ann. § 41–617(2) (1977 Repl.) provided, in pertinent part:

> (2) If a person was fifteen (15), sixteen (16), or seventeen (17) years of age at time of the conduct alleged to constitute an offense, he may be charged either in circuit or municipal court, or in juvenile court. If he is charged in circuit or municipal court, such court may enter an order waiving jurisdiction and transferring the proceedings to juvenile court.

The Magistrate found and the District Court agreed that, in view of the serious nature of the offenses charged and the wantonly violent manner in which the crimes were carried out, there was little chance that a motion to transfer to juvenile court would have been successful. We have no reason to doubt that assessment, and we therefore hold that the decision of Hale's counsel not to file a futile motion to

---

**3.** Under Arkansas law, an individual sentenced to life imprisonment after February 12, 1969, and before April 1, 1977, is not eligible for parole unless the sentence is commuted to a term of years. Ark.Code Ann. § 16–93–601(b) (1987).

**4.** This decision was affirmed by the Supreme Court on the ground that Hill failed to allege that his attorney's erroneous advice regarding parole eligibility prejudiced Hill in his decision to plead guilty. *Hill v. Lockhart*, 474 U.S. 52, 60, 106 S.Ct. 366, 371, 88 L.Ed.2d 203 (1985).

transfer was neither deficient performance on his part nor prejudicial to Hale.

■ Hale's final ineffective-assistance argument is that his counsel was ineffective in not challenging the legality of his arrest and subsequent confession to the police.

Hale was arrested in a J.C. Penney store when store employees suspected his companion, Mattie Jones, of trying to use a stolen credit card. No additional evidence was presented at the evidentiary hearing to indicate that probable cause existed for Hale's arrest, and the Magistrate found that probable cause for the arrest did not exist. It is well settled that an illegal arrest and detention, without more, does not invalidate a subsequent conviction. *United States v. Crews*, 445 U.S. 463, 474, 100 S.Ct. 1244, 1251, 63 L.Ed.2d 537 (1980); *Gerstein v. Pugh*, 420 U.S. 103, 119, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *United States v. Davis*, 785 F.2d 610, 616 (8th Cir.1986). Hale argues, however, that because his detention violated the Fourth Amendment, under the exclusionary rule his confession while in custody was inadmissible as evidence of guilt. *See Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Assuming for the purposes of this discussion that Hale's confession was inadmissible at trial as evidence of Hale's guilt (we expressly decline to decide this issue), our inquiry relative to Hale's ineffective assistance of counsel claim is whether the outcome of the plea negotiations would have been different had Hale's counsel moved to suppress this evidence. We conclude that it would not.

There was ample evidence aside from his confession implicating Hale in the crimes charged and justifying Hale's counsel in advising Hale to enter a plea of guilty. Jones, the woman with Hale when he was arrested, gave police a detailed account of Hale's participation in the crimes. Police also had a signed written statement from Danny Williams, a codefendant, confessing to participation in one of the robberies and the murder and implicating Hale. The Magistrate found that, excluding Hale's confession, there was sufficient damning evidence in the prosecutor's file for Hale's counsel to advise Hale to enter a plea of guilty. We are satisfied this finding is not clearly erroneous and therefore hold that Hale was not prejudiced by his counsel's failure to move to suppress Hale's confession.

### III.

■ Hale's next claim is that his guilty plea was involuntary and not intelligently made because it was entered to avoid the death penalty. Hale argues it was highly unlikely that the death penalty would have been imposed in his case in view of his youth and the supposed reluctance of Arkansas juries to impose a death sentence. He further argues that because he was not aware of how small the risk of death was, his guilty plea was involuntary and not intelligently made. Even if we accept as true Hale's debatable contention that he bore only a slight risk of receiving a death sentence, this fact does not invalidate his guilty plea.

The longstanding test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970). "[A] plea of guilty is not invalid merely because entered to avoid the possibility of a death penalty." *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970). Hale signed a plea agreement in which he stated that he fully understood the nature of the charges against him and the maximum and minimum possible sentences. He pled guilty in open court and thereby ensured he would not receive the death penalty. His present contention that the risk of receiving the death penalty was considerably less than he understood it to be at the time does not serve to invalidate his plea. The threat of the death penalty is a powerful incentive to plead regardless of whether the risk of receiving it is perceived to be great or

small. "A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action." *Id.* at 757, 90 S.Ct. at 1473. We reject Hale's argument that his guilty plea was not voluntarily and intelligently made.

## IV.

Hale contends that his plea and sentencing hearing are "null and void", Appellant's Brief at 25, because the state trial court did not state on the record that it found Hale guilty, and did not comply with Arkansas Rules of Criminal Procedure 24.4(a), (b), (c) and (e) in taking his guilty plea. He further argues that his sentences are so vague and ambiguous as to constitute a denial of due process. These arguments are without merit.

Our review of the guilty plea proceeding convinces us that the necessary procedural requirements were met. The relevant parts of Arkansas Rule of Criminal Procedure 24.4 provide:

> The court shall not accept a plea of not guilty or nolo contendere from a defendant without first addressing the defendant personally, informing him of and determining that he understands:
>
> (a) the nature of the charge;
>
> (b) the mandatory minimum sentence, if any, on the charge;
>
> (c) the maximum possible sentence on the charge, including that possible from consecutive sentences;
>
> \* \* \* \* \* \*
>
> (e) that if he pleads guilty or nolo contendere he waives his right to a trial by jury and the right to be confronted with the witnesses against him, except in capital cases where the death penalty is sought.

In the present case, instead of stating the available minimum and maximum sentences, the state trial court informed Hale at the outset of the hearing of the actual sentence he would receive if he pleaded guilty. The court asked:

> Do you understand that on a plea of guilty that you are to receive on aggravated robbery one, two, three, four concurrent life sentences; and in battery in the first degree a sentence of 20 years concurrent and on murder in the first degree reduced from capital felony murder a life sentence concurrent?
>
> Defendant Hale: Yes.

Transcript of Guilty Plea Hearing at 3–4. The state trial court then asked Hale to describe the facts surrounding each count charged, which Hale did. After hearing Hale's factual account of the crimes committed, the court informed Hale that he was entitled to a trial in which a jury would determine his guilt or innocence and his punishment, that at trial he would be entitled to testify on his own behalf, and that if he chose not to testify, the jury would be instructed not to consider this in determining his guilt. Hale indicated that he understood each of these rights and did not have any questions. The court then accepted Hale's guilty pleas and imposed sentence.

First, the fact that the court did not state for the record that it found Hale guilty is immaterial. The state trial court ascertained the facts of the charges against Hale and accepted Hale's plea of guilty; this is functionally equivalent to finding Hale guilty on all counts charged. Second, our review of the guilty plea proceeding convinces us that Rule 24.4 was substantially complied with and Hale's guilty plea was procedurally valid. *See Clark v. State,* 271 Ark. 866, 611 S.W.2d 502 (Ark. 1981).

Hale's final argument, that his sentences are so vague and ambiguous as to constitute a denial of due process, is equally without merit. Prior to accepting Hale's guilty plea, the court clearly informed Hale that he would serve four concurrent life sentences and a concurrent twenty-year sentence. The sentence the court imposed from the bench after accepting Hale's plea is consistent with its earlier statement except that the court did not specifically state that the sentences would run concurrently. No mention of parole was made at the plea hearing. In the commitment orders, the

trial court did state incorrectly that Hale would be required to serve one-third of his sentence before becoming eligible for parole. Hale cannot claim to have been confused by language written after the plea hearing, however, when he was clearly and unambiguously told what his sentence would be before entering his plea. *Cf. Corcoran v. Wyrick,* 757 F.2d 207 (8th Cir.) (an erroneous statement regarding parole made by the sentencing judge at the sentencing hearing will not afford habeas relief when appellant is aware of the sentences he received), *cert. denied,* 474 U.S. 923, 106 S.Ct. 256, 88 L.Ed.2d 263 (1985). Hale received the identical sentence he was told he would receive by the court; any confusion created by the commitment orders is settled by section 16–93–601(b) of the Arkansas Code Annotated, which excludes an individual serving a life sentence from parole eligibility. His sentence is neither vague nor ambiguous, and this claim offers him no basis for relief.

### V.

None of Hale's claims has merit and we therefore affirm the District Court's denial of his petition for a writ of habeas corpus.