**TIME WARNER CABLE OF NEW YORK CITY, a division of Time Warner Entertainment Company, L.P., Plaintiff,**

v.

**Ivan OLMO, Defendant.**

**Civil Action No. CV–96–4544(DGT).**

United States District Court,
E.D. New York.

Sept. 9, 1997.

Patrick J. Sullivan, Daniel J. Lefkowitz, Jericho, NY, for Plaintiff.

Ivan Olmo, Corona, NY, pro se.

## ORDER

TRAGER, District Judge.

On August 20, 1997, Magistrate Judge Levy issued a Report and Recommendation in the above-captioned matter. On September 2, 1997, plaintiff filed objections to this Report and Recommendation. After a review of the papers and upon due consideration, the court adopts in full the findings contained in the Report and Recommendation. The Clerk of the Court is directed to enter a final judgment in accordance with Magistrate Levy's Report and Recommendation.

SO ORDERED.

## REPORT AND RECOMMENDATION

LEVY, United States Magistrate Judge.

By order dated December 5, 1996, the Honorable David G. Trager, United States District Judge, issued a default judgment against defendant Ivan Olmo and referred

this case to me to report and recommend the amount of damages and attorney's fees, if any, to which plaintiff is entitled.[1] For the reasons stated below, I respectfully recommend that judgment be entered in favor of plaintiff and against defendant Ivan Olmo in the amount of $21,000.00 and that plaintiff be awarded reasonable attorney's fees and costs in the amount of $1,586.00.

## BACKGROUND AND FACTS

Plaintiff Time Warner Cable of New York City ("plaintiff" or "TWCNYC") brought this action against defendant Ivan Olmo ("defendant" or "Olmo") on September 13, 1996, alleging violations of the Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605 (1991). The complaint alleges that in exchange for cash payment, Olmo modified two cable television decoders, enabling them to descramble all of TWCNYC's programming services, including premium and pay-per-view services, without authorization. Defendant seeks statutory damages, plus reasonable attorney's fees and costs. After Olmo failed to appear in this action, Judge Trager entered a default judgment against him and referred the issue of damages to me. By order dated December 9, 1996, I directed the parties to file written inquest submissions. Plaintiff filed its written submission in a timely manner, but defendant again failed to respond.

Once a default judgment is entered, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. *Cotton v. Slone,* 4 F.3d 176, 181 (2d Cir.1993); *Greyhound Exhibitgroup, Inc., v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir.1992), *cert. denied,* 506 U.S. 1080, 113 S.Ct. 1049, 122 L.Ed.2d 357 (1993); *Main Events/Monitor Prods. v. Batista,* No. 96 CV 5089, 1997 WL 269589, at *1 (E.D.N.Y. April 21, 1997.) Plaintiff's allegations are as follows:

Pursuant to certain franchises, plaintiff, a division of Time Warner Entertainment Company, L.P., operates and maintains a cable television system within parts of Kings and Queens Counties that offers broadcast and cable television programming to its subscribers. TWCNYC's programming includes "basic cable" and "premium" channels. "Basic cable" is a package of channels that a subscriber receives at a flat monthly rate. "Premium" channels are added channels outside of the basic cable package, including Cinemax, Home Box Office, and Showtime, for which a subscriber must pay an additional monthly fee. TWCNYC also offers "pay-per-view" programming, a service that allows subscribers to view individual movies, sporting events or other entertainment for a per-event fee in addition to the subscriber's regular monthly fee.

The signals TWCNYC transmits are private communications that are solely for the benefit of TWCNYC's paying customers. TWCNYC's signals for premium channels and pay-per-view options are electronically coded or "scrambled" so that they must be decoded by electronic decoding equipment in order for one to view the signals clearly on a television receiver. As part of each paying customer's subscription, TWCNYC provides a converter-decoder box that allows the subscriber to view the type and amount of programming that the subscriber has purchased and is authorized to receive.

Defendant Ivan Olmo is an individual residing at 106–07 Otis Avenue, Flushing, New York. In late 1995, TWCNYC "became aware" that defendant was distributing business cards indicating that he was in the business of "cable repair."[2] (Inquest Affidavit of Thomas Allen, sworn to January 23, 1997 ("Allen Aff."), ¶ 12). On two unspecified dates in January of 1996, TWCNYC's undercover investigators went to Olmo's home in Flushing, gave Olmo a cable decoder, and asked him to modify the device so that it could receive and display all of TWCNYC's programming services, including premium and pay-per-view programming services,

---

1. On February 21, 1997, defendant moved to vacate the default judgment against him. Judge Trager denied the motion by order dated June 16, 1997 on the ground that defendant had failed to present a meritorious defense.

2. Plaintiff does not explain how it "became aware" of Olmo's activities and does not provide any evidence that Olmo in fact distributed any such business cards.

without payment to or authorization from TWCNYC. (*Id.* ¶ 12). Olmo did so and returned the devices to the investigators. (*Id.*) On the first occasion, the investigators paid Olmo $140.00, and on the second occasion they paid Olmo $125.00.[3] (*Id.*)

The investigators then returned both of the modified devices to TWCNYC for inspection and testing. (*Id.*) TWCNYC's tests confirmed that each of the devices Olmo modified was capable of receiving and displaying TWCNYC's programming, including premium and pay-per-view programming services. (*Id.*) Plaintiff also alleges that during the transactions, Olmo told the investigators that he had modified other devices in addition to the two modified for TWCNYC's investigators.[4] (*Id.* at ¶ 13). However, plaintiff does not specifically allege or provide any evidence that defendant actually modified any devices other than the two that plaintiff's investigators provided.

Plaintiff seeks the maximum statutory damages of $100,000 pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) or, in the alternative, $10,000 pursuant to 47 U.S.C. § 553(C)(3)(A)(ii), for each of Olmo's documented violations. Plaintiff also seeks an additional damage award of up to $100,000 under section 605(e)(3)(C)(ii), or up to an additional $50,000 pursuant to section 553(C)(3)(B), plus reasonable attorney's fees and costs.

### DISCUSSION

Plaintiff requests an award under either 47 U.S.C. § 605 or 47 U.S.C. § 553. While both statutes allow the aggrieved party to elect to recover actual damages and lost profits, or statutory damages (*see* 47 U.S.C. §§ 605(e)(3)(C)(i)(II) and 553(c)(3)(A)), § 605 contains a more severe statutory damages provision. Specifically, 47 U.S.C. § 553(c)(3)(A)(ii) allows an aggrieved party to recover statutory damages for "all violations involved in the action, in a sum of not less than $250 or more than $10,000 as the

court considers just," while 47 U.S.C. § 605(e)(3)(C)(i)(II) allows statutory damages for "*each* violation of paragraph (4) of this subsection . . . in a sum not less than $10,000, or more than $100,000, as the court considers just." (emphasis added).

■■ Sections 553 and 605 both contain express provisions against the manufacture, sale, and distribution of devices for the unauthorized reception of cable television services. 47 U.S.C. § 553(a)(1) provides:

No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

Citing to subparagraph (a)(1), § 553(a)(2) provides:

For the purpose of this section, the term "assist in intercepting or receiving" shall include the manufacture or distribution of equipment intended by the manufacturer or distributor (as the case may be) for unauthorized reception of any communications service offered over a cable system in violation of subparagraph (1).

Section 605(e)(4) similarly prohibits these types of activities:

Any person who manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or is intended for any other activity prohibited by section (a) of this section, shall be fined not more than $500,-000 for each violation. . . .

In *International Cablevision, Inc. v. Sykes*, 75 F.3d 123, 133 (2d Cir.1996) (*"Sykes II"*), *cert. denied sub nom., Noel v. International Cablevision, Inc.*, —— U.S. ——, 117 S.Ct. 298, 136 L.Ed.2d 217 (1996), the Second Circuit recently held that both 47 U.S.C. § 605

---

**3.** Plaintiff provides no explanation as to why the investigators paid Olmo a different amount on each occasion.

**4.** Plaintiff's submission does not provide any specifics as to exactly what Olmo said or when he said it; plaintiff merely maintains that Olmo mentioned at some point that he had modified some unspecified number of additional devices.

and 47 U.S.C. § 553 apply to the modification and sale of unauthorized cable decoder boxes. This resolved the question that had been raised, but not decided, by the court's earlier decision in the same case, *International Cablevision, Inc. v. Sykes*, 997 F.2d 998 (2d Cir.1993) ("*Sykes I*"), with regard to the applicability of § 605 to illegal cable decoder box modifications and sales. *Time Warner Cable of New York City v. U.S. Cable T.V., Inc.*, 920 F.Supp. 321, 328 (E.D.N.Y.1996). Thus, it is now established that both sections 553 and 605 apply to instances where the defendant modifies, sells, or distributes cable decoder boxes without authorization. *See Sykes II*, 75 F.3d at 133; *U.S. Cable T.V., Inc.*, 920 F.Supp. at 329; *TKR Cable Co. v. Cable City Corp.*, No. 96–2977–(GEB), 1996 WL 465508, at *6 (D.N.J. July 29, 1996). *See also Cablevision Sys. Corp. v. Muneyyirci*, 876 F.Supp. 415, 425 (E.D.N.Y.1994). In this case, since defendant violated both § 553 and § 605, the court must assess damages under the more severe provisions of § 605. *Sykes II*, 75 F.3d at 133.

As explained above, § 605 provides that an aggrieved party may recover statutory damages "for each violation of paragraph (4) of this subsection ... in a sum not less than $10,000, or more than $100,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). Section 605 also allows for an increase in damages of not more than $100,000 per violation for conduct that is committed willfully and for the purpose of obtaining commercial advantage or private financial gain. 47 U.S.C. § 605(e)(3)(C)(ii).

■ The amount of damages assessed pursuant to § 605 rests within the sound discretion of the court. 47 U.S.C. § 605(e)(3)(C)(i)(II). *See also Home Box Office v. Champs of New Haven, Inc.*, 837 F.Supp. 480, 484 (D.Conn.1993). However, § 605(e)(4) instructs that "[f]or purposes of all penalties and remedies established for violations of this paragraph, the prohibited activity established herein as it applies to each such device [manufactured, modified, sold, etc.] shall be deemed a separate violation." Thus, as a rule, courts in this district faced with the unauthorized sale or modification of devices to aid in the illegal receipt and broadcast of a cable program simply award the minimum statutory amount of $10,000 per violation, pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II). *See U.S. Cable T.V., Inc.*, 920 F.Supp. at 331; *TWC Cable Partners v. Bravo*, 94 CV 3250, 96 CV 2178 (E.D.N.Y. March 29, 1996); *Muneyyirci*, 876 F.Supp. at 426.

■ According to the Inquest Affidavit of Thomas Allen, Director of Signal Security for plaintiff, on two separate occasions investigators gave Olmo a device and he modified it to receive and display all of plaintiff's programming services, including premium and pay-per-view programming services. (Allen Aff., ¶ 12). Accordingly, in light of pertinent case law, I respectfully recommend that plaintiff be awarded $10,000 per violation, for a total of $20,000 in statutory damages, for violations of the Communications Act.

■ With respect to plaintiff's application for additional damages for conduct that is committed willfully and for the purpose of obtaining commercial advantage or private financial gain, plaintiff's request should be granted. According to the complaint, defendant modified the investigators' two devices to receive TWCNYC's cable programming, charging a total of $265.00. (*Id.* ¶ 12). This was a deliberate act in which the defendant engaged for private financial gain. Therefore, defendant's conduct was willful. In addition, the court may draw an inference of willfulness from a defendant's failure to appear and defend an action in which the plaintiff demands increased statutory damages based on allegations of willful conduct. *See Fallaci v. The New Gazette Literary Corp.*, 568 F.Supp. 1172, 1173 (S.D.N.Y.1983) (inferring willfulness from defendant's default in copyright infringement case). Moreover, defendant admitted to the investigators that he had modified decoder boxes in addition to those he modified for TWCNYC's investigators. (Allen Aff., ¶ 13).

On the other hand, the maximum award of $100,000 plaintiff seeks is demonstrably excessive under the circumstances presented. TWCNYC alleges merely that defendant received two devices from the investigators, modified them, and returned them to the

investigators, charging a total of $265.00. (*Id.* ¶ 12). Although plaintiff also alleges that it "became aware" that Olmo distributed business cards stating that he was engaged in the business of cable repair, plaintiff does not explain how it became so aware and has not provided any evidence that Olmo in fact distributed such cards. Even assuming, *arguendo*, that Olmo did distribute such business cards, plaintiff does not allege that Olmo was not engaged in such a business legitimately, or that such business cards actually aided him in soliciting customers for an unauthorized modification scheme. (*Id.*)

Plaintiff also states that Olmo "apparently did not conduct a mail order business," and it is therefore likely that any additional unauthorized modifications he performed were "for nearby friends or neighbors who are TWCNYC subscribers." (*Id.* ¶ 13). Accordingly, taking into account the relatively small scale of Olmo's unauthorized modification scheme, I respectfully recommend that an additional award of $500.00 in enhanced damages per violation be assessed against Olmo, for a total of $1,000.00

■ Finally, as the prevailing party, plaintiff is entitled to an award of costs and reasonable attorney's fees in this action. 47 U.S.C. § 605(e)(3)(B)(iii); *Sykes*, 75 F.3d at 127; *U.S. Cable T.V., Inc.*, 920 F.Supp. at 329. In accordance with this statutory right, plaintiff has submitted detailed time records indicating that Daniel J. Lefkowitz, Esq. worked 1.2 hours at an hourly rate of $190.00, for a total of $228.00; William B. Jung, Esq. worked 1.2 hours at an hourly rate of $150.00, for a total of $180.00; Patrick J. Sullivan, Esq. worked 2 hours at an hourly rate of $150.00, for a total of $300.00; James T. Ausili, Esq. worked 3.5 hours at an hourly rate of $110.00, for a total of $385.00; and Christina Lee Ahn (a law school graduate awaiting admission to the Bar of the State of New York at the time she performed services) worked 3.9 hours at an hourly rate of $90.00, for a total of $351.00. (*See* Plaintiff's Inquest Memorandum of Law ("Plaintiff's Memo"), Exhibit D). I have reviewed plaintiff's submissions and am satisfied that the hourly rates are reasonable and that the number of hours expended is also reasonable.

*See Time Warner Cable of New York City v. Taco Rapido Restaurant*, 96 CV 2178 (E.D.N.Y. June 30, 1997) (similar hourly rates applied); *Cablevision Sys. Corp. v. 45 Midland Enters., Inc.*, 858 F.Supp. 42, 45 (S.D.N.Y.1994) (same). In addition, plaintiff spent $120.00 in filing fees, and $22.00 for service of process. (Plaintiff's Memo, Exhibit D). I therefore respectfully recommend that plaintiff be awarded $1,586.00 in attorney's fees and costs.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that defendant Ivan Olmo be held liable for $21,000.00 in combined statutory damages and $1,586.00 in attorney's fees and costs.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Trager and the undersigned, within ten (10) business days. Failure to file objections within the specified time waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

August 20, 1997.