**CABLEVISION OF SOUTHERN CONNECTICUT, LIMITED PARTNERSHIP, Plaintiff,**

v.

**Thomas SMITH, Defendant.**

**No. CIV.A. 3:99–CV–2545 JC.**

United States District Court, D. Connecticut.

April 25, 2001.

Catherine Dugan O'Connor, Elizabeth Corwin, Day, Berry & Howard, Stamford, CT, Daniel J. Lefkowitz, Daniel Millman, Lefkowitz, Louis & Sullivan, Jericho, NY, for Plaintiff.

**AMENDED MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST THOMAS SMITH [DOCKET NO. 9]**

HALL, District Judge.

This is an action for statutory damages for unauthorized interception of cable television services and for the sale and distribution of devices designed to effect the unauthorized interception of cable television services, under 47 U.S.C. §§ 553(a) and 605. Plaintiff Cablevision of Southern Connecticut, L.P. ("Cablevision") seeks a default judgment against defendant Thomas Smith ("Smith"). The court held a hearing on damages in connection with this motion on March 14, 2001. For the reasons stated herein, Cablevision's Motion for Default Judgment against Defendant Thomas Smith [Docket No. 9] is GRANTED.

## I. BACKGROUND

The following undisputed facts appear on the record from the complaint and Cablevision's other submissions, the procedural history of this matter, and from the hearing on damages before the court. Cablevision filed this action for statutory damages against Thomas Smith on December 27, 1999.[1] Cablevision alleged in its complaint that Smith illegally sold or otherwise distributed "pirate" cable television descramblers for profit and/or economic gain. Complaint (Dkt. No. 1) at ¶ 18. Cablevision alleged that Smith purchased the "pirate" cable television converter-decoders from Ultimate Mail Order Services of Raleigh, North Carolina, in violation of sections 553(a)(1) and 605(e)(4) of the Communications Act of 1934, as amended, 47 U.S.C. §§ 553(a) and 605(e)(4). *Id.*

Specifically, the complaint alleges that Cablevision, a Connecticut limited partnership with business offices in Bridgeport, Connecticut, holds a certificate of public conveyance and necessity, pursuant to Connecticut General Statutes §§ 16–331 *et seq.*, to operate a cable television system

---

1. Cablevision elected to recover statutory as opposed to actual damages in accordance with its statutory rights under 47 U.S.C. §§ 553(c)(3)(A) and 605(e)(3)(C)(i). Affirmation in Support of Motion for Default Judgment Against Defendant Thomas Smith (Docket No. 10) at ¶ 7.

in a certain franchise area in southern Connecticut, and, accordingly, that Cablevision is a cable operator, within the meaning of 47 U.S.C. §§ 522(5) and 553(a). *Id.* at ¶¶ 4, 6. The complaint further alleges that Cablevision provides cable service within the meaning of 47 U.S.C. § 522(6), to certain customers who are authorized to receive a particular level of service and certain other order-specific video programming. *Id.* at ¶¶ 6–8. According to the complaint, each subscriber is entitled to receive only those programming services he selects and purchases. *Id.* at ¶ 9.

Cablevision claims that its cable signals include communications services offered over a cable system and satellite cable programming and, accordingly, are private communications not intended for public or other use without authorization. *Id.* at ¶¶ 10, 17. Cablevision alleges that its signals for premium programming services and for certain "Pay–Per–View" services are electronically coded or scrambled so that they must be decoded by electronic decoding equipment in order for the signals to be viewed clearly on a television set. *Id.* at ¶¶ 11, 13. Cablevision provides customers with such equipment to permit the subscriber to view only the level of service and programming that he or she has purchased. *Id.* at ¶ 12. Cablevision alleges that certain unauthorized "pirate" decoders or descramblers exist that have been designed to defeat the scrambling or security functions of Cablevision's cable system. *Id.* at ¶ 14. Such a device can allow an individual to receive, without paying the applicable charges to Cablevision, unlimited pay-per-view movies at approximately $4 each and pay-per-view events for which Cablevision charges authorized subscribers up to $39.99 each. *Id.* at ¶ 15. The use of a "pirate" device could also allow an individual access to premium services, such as Showtime and other "movie channels" for which the price ranges from $7 to $13 per month. *Id.*

The complaint alleges that Smith has been engaged in a scheme to illegally sell or otherwise distribute "pirate" cable television descramblers for profit and/or economic gain. *Id.* at ¶ 18. According to the complaint, after Smith purchased illegal decoders from Ultimate Mail Order Services of Raleigh, North Carolina, he

> then resold, redistributed, and assisted in the sale or distribution of such equipment to subdistributors, purchasers, and end-users with the specific intent and knowledge that such devices would be used to descramble, decode, and thereby provide reception of the scrambled premium and pay per view programming services of Cablevision to person who were neither paying for those services nor authorized by plaintiff to receive such programming.

*Id.; see also id.* at ¶ 19. Cablevision further alleges that "Smith is also engaged in an ongoing scheme to intercept and obtain plaintiff's cable television programming services without making payment therefor." *Id.* at ¶ 20. Smith, according to Cablevision's complaint, "has utilized unauthorized 'pirate' cable television converter-decoder devices which he has obtained from Ultimate Mail Order Services with the specific intent that the devices be used to decode plaintiff's scrambled cable television programming services without plaintiff's authorization." *Id.* Cablevision further claims that "[t]he 'pirate' converter-decoders that defendant obtained from Ultimate Mail Order Services and thereafter resold, redistributed, and used have been modified to circumvent the encryption technology used by Cablevision on its premium and pay per view services." *Id.* at ¶ 21. "These pirate devices have the capability to unlawfully descramble all scrambled 'premium' and pay per view cable

television programming transmitted on Cablevision's system." *Id.* Cablevision alleges that, in so doing, Smith willfully and intentionally violated 47 U.S.C. § 553(a)(1) and 47 U.S.C. §§ 605(a) & 605(e)(4), because Cablevision did not authorize or consent to Smith's use, sale, or distribution of "pirate" converter-decoders. *Id.* at ¶¶ 23–32.

On February 5, 2000, Cablevision effected personal service of the summons and complaint upon Smith at his residence at 76 Berkeley Place, Bridgeport, Connecticut. Return of Service (Docket No. 3). Smith failed to appear and to file his answer to the complaint within twenty days after this service, as required by Fed. R.Civ.P. 12(a)(1)(A). Affirmation in Support of Motion for Default Judgment Against Defendant Thomas Smith (Docket No. 10) at ¶ 4. Accordingly, on November 5, 2000, Cablevision filed a Request to Clerk to Enter Default against Smith, which was sent via first-class mail to Smith's residence. Docket No. 7. Smith did not appear or oppose Cablevision's request for entry of judgment. On November 13, 2000, the clerk entered a default against Smith and directed that a Motion for Default Judgment pursuant to Fed. R.Civ.P. 55(b) be filed within 30 days. *See* Fed.R.Civ.P. 55(a). On December 26, 2000, Cablevision filed its motion for entry of default judgment against Smith, which was sent via first-class mail to Smith's residence. Motion for Default Judgment Against Defendant Thomas Smith (Docket No. 9). As of March 23, 2001, Smith has not appeared and has not submitted any opposition to Cablevision's motion.

At the hearing on damages, Cablevision submitted an Affirmation of Daniel Millman, Esq., of Services in Support of Inquest [Docket No. 14], for purposes of setting forth Cablevision's requested attorneys' fees for its action against Smith.

Annexed thereto is an itemized chart of contemporaneous time records identifying: (1) the attorney or paralegal who worked on the matter; (2) the date; (3) the time spent by each attorney and paralegal; and (4) a brief narrative of the work performed. The Millman Affirmation further explains how the fees sought in the matter were calculated. At the hearing on damages, Attorney Millman also orally represented that he had spent an additional five hours on the case since the time he prepared the Affirmation through the hearing. He also described the basis for his hourly rate of $170/hour, including his education and experience. Cablevision's aggregate attorneys' fees, according to this Affirmation and oral representation, amount to $2,881, for its services in prosecuting an action against Smith pursuant to 47 U.S.C. § 605(e)(3)(B)(iii). Affirmation of Services in Support of Inquest (Docket No. 14) at ¶ 6.

## II. DISCUSSION

### A. Standards

It is well established that a party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the "sound judicial discretion" of the court. *Shah v. N.Y. State Dep't of Civil Serv.,* 168 F.3d 610, 615 (2d Cir.1999). In determining whether to enter a default judgment, the court is free to consider a number of factors. Among these are: (1) the amount of money involved; (2) whether issues of fact or of substantial public importance are at stake; (3) whether the default is largely technical; (4) whether the plaintiff has been substantially prejudiced by the delay involved; (5) whether the grounds for default are clearly established or are in doubt; (6) whether the default was caused by a good-faith mistake or excusable neglect; (7) how harsh an effect a default judgment might have; and

(8) whether the court thinks it later would be obligated to set aside the default on defendant's motion. 10 *Moore's Federal Practice* § 55.20[2][b] (3d ed.1999); *see also Pinaud v. County of Suffolk,* 52 F.3d 1139, 1152 n. 11 (2d Cir.1995) (citing with approval *Moore's* as detailing factors to be considered in entering default judgment); *Feeley v. Whitman Corp.,* 65 F.Supp.2d 164, 171 (S.D.N.Y.1999) (listing factors). It is also true that "in civil cases, where a party fails to respond, after notice the court is ordinarily justified in entering a judgment against the defaulting party." *Bermudez v. Reid,* 733 F.2d 18, 21 (2d Cir.1984) (citing Fed.R.Civ.P. 55(b)(2)). Moreover, "the court has considerable latitude in deciding whether to require plaintiff to produce evidence in support of the claims before entering such a judgment." *Id.* at 21 (citation omitted).

The Second Circuit has deemed it "ancient learning that a default judgment deems all the well-pleaded allegations in the pleadings to be admitted." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 108 (2d Cir. 1997) (citations omitted). However, "[w]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir.1992) (citations omitted). "Damages, which are neither susceptible of mathematical computation nor liquidated as of the default, usually must be established by the plaintiff in an evidentiary proceeding in which the defendant has the opportunity to contest the amount." *Id.* (citations omitted). The Second Circuit has described "the scope of damage recovery pursuant to a default judgment" as follows:

> The outer bounds of recovery allowable are of course measured by the principle of proximate cause. The default judg-

ment did not give [plaintiff] a blank check to recover from [defendant] any losses it had ever suffered from whatever source. It could only recover those damages arising from the acts and injuries pleaded and in this sense it was [plaintiff's] burden to show "proximate cause." On the other hand, there was no burden on [plaintiff] to show that any of [defendant's] acts caused the well-pleaded injuries, except as we have indicated that it had to for the purpose of establishing the extent of the injury caused [plaintiff], in dollars and cents.

*Id.* at 158–59 (citation omitted).

## B. Jurisdiction and Venue

This action arises under 47 U.S.C. §§ 553(a)(1) and 605(a). The court therefore has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. Venue is also properly established in the District of Connecticut pursuant to 28 U.S.C. § 1391(b).

## C. Entry of Default Judgment

■ Smith has been accused of the unauthorized interception of cable television services, and the sale and distribution of devices designed to effect the unauthorized interception of cable television services, from Cablevision. Considering the factors for deciding whether the enter a default judgment, the court notes that the following factors weigh in favor of entering a default judgment against Smith: (1) the default is not largely technical where Smith has not appeared or answered in over two years; and (2) the court does not think it would later be obligated to set aside the default on Smith's motion, given Smith's total lack of action in this case up to this point. Moreover, issues of substantial public importance are at stake, since Congress has indicated that conduct such as Smith's conduct is of significant public importance, implementing statutory dam-

ages because of the gravity and breadth of the cable piracy problem:

> The prohibition of pirating closed-circuit signals addresses the collective policy concerns of the continued viability of the cable service industry, not to mention, the disburdening of cable subscribers who are forced to subsidize the costs of cable pirating. H.R. 4103, 98th Cong., 2d Sess. (1984) *reprinted in* 1984 U.S.Code Cong. & Admin. News 4655, 4720. Moreover, the piracy statutes provide equitable relief and attorneys' fees to enhance vindication of this intangible property right.

*Storer Cable Comm. v. Joe's Place Bar & Restaurant,* 819 F.Supp. 593, 596 (W.D.Ky.1993).

There is also no doubt of the grounds for Smith's default. Cablevision filed its complaint on December 27, 1999, and a copy of the complaint and summons was served on Smith personally at his residence on February 5, 2000. Smith failed to file an appearance or answer, and the court granted Cablevision's Request to Clerk to Enter Default on November 13, 2000, well after the 20 days in which Smith had to appear and answer after being served, as required by Fed.R.Civ.P. 12(a)(1)(A). On December 26, 2000, Cablevision filed its motion for entry of default judgment against Smith, which was sent via first-class mail to Smith's residence. Motion for Default Judgment Against Defendant Thomas Smith (Docket No. 9). Nevertheless, Smith has to date made no appearance and filed no responsive pleading in this matter. Cablevision's attorney represented at the inquest hearing that he had served notice of the inquest hearing on Smith, without any requirement that he do so, and yet Smith did not appear. Given Smith's notice of the action and his continued failure to appear, answer or otherwise respond to the complaint for over two years since its filing, Smith's delay in answering the complaint cannot be the result of a good-faith mistake or excusable neglect. Thus, considering all the factors weighing in favor of entering a default judgment, the court has determined that the entry of a default judgment is appropriate.

Upon entry of a default judgment for "failure to plead or otherwise defend" against a complaint, a defendant admits every well-pleaded allegation of the complaint except those relating to damages. *See Transatlantic,* 109 F.3d at 108; *see also Time Warner Cable of N.Y. City v. Barnes,* 13 F.Supp.2d 543, 547 (S.D.N.Y. 1998). Accordingly, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true. *Transatlantic,* 109 F.3d at 108; *see also* Fed.R.Civ.P. 8(d). Here, the allegations of Cablevision's complaint, taken as true, establish a violation of sections 553(a)(1) and 605(a) and 605(e)(4) because of the purchase and subsequent use, sale, or distribution of illegal decoder devices to effect the unauthorized interception of any cable television programming services that originate and are delivered via satellite or by other means of over-the-air signal transmission is a violation of 47 U.S.C. § 553(a)(1) and 47 U.S.C. §§ 605(a) and 605(e)(4). *See International Cablevision, Inc. v. Sykes,* 75 F.3d 123, 133 (2d Cir. 1996) ("*Sykes II*"); *Barnes,* 13 F.Supp.2d at 547–48.

■ Section 553(a) of Title 47 prohibits the unauthorized reception of cable service. Specifically, the statute prohibits persons from "intercept[ing] or receiv[ing] or assist[ing] in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). Taking the

**284**

allegations of Cablevision's complaint as true, Smith has violated 47 U.S.C. § 553(a), by intercepting Cablevision's cable television programming services using a "pirate" device without Cablevision's authorization or making payment therefor.

■ Similarly, 47 U.S.C. § 605(a) prohibits the interception and publication of interstate communications. Specifically, that statute provides, in pertinent part, that "[n]o person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto." 47 U.S.C. § 605(a). Notwithstanding its express application to "wire or radio communication," this case is governed by the clear holding of the Second Circuit that section 605 applies to the unauthorized receipt of cable television programming. *See Sykes II,* 75 F.3d at 133; *see also Time Warner Cable of N.Y. City v. Olmo,* 977 F.Supp. 585, 588–89 (E.D.N.Y.1997). The Second Circuit has held that an individual's use of a "pirate" cable television descrambling device, to intercept, without the cable operator's authorization, any programming services that were transmitted to that cable operator via satellite (or other over-the-air means of transmission) is a violation of section 605(a). *Sykes II,* 75 F.3d at 133. However, section 605 does not apply where the interception at issue does not include any radio-originated communications. *See Sykes II,* 75 F.3d at 131 n. 5. Here, Cablevision has alleged that its transmissions include radio-originated communications. *See, e.g.,* Complaint (Docket No. 1) at ¶ 26. Moreover, at the hearing on damages, Cablevision elicited testimony from Cablevision's Director of Security Delroy Patrick that Cablevision's signals to the premium and pay-per-view television programming

services which Smith's descrambler intercepted are transmitted and received by Cablevision via orbiting satellites. Section 605's prohibitions against the interception and publication of interstate communications therefore apply to this case as well, and, taking the aforementioned allegations of Cablevision's complaint as true and crediting Mr. Patrick's testimony, as the court does, Smith has also violated 47 U.S.C. § 605(a).

■ Additionally, section 605(e)(4) provides:

Any person who manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services, or is intended for any other activity prohibited by subsection (a) of this section, shall be fined not more than $500,000 for each violation, or imprisoned for not more than 5 years for each violation, or both.

47 U.S.C. § 605(e)(4). The statute further instructs that, "[f]or purposes of all penalties and remedies established for violations of this paragraph, the prohibited activity established herein as it applies to each such device shall be deemed a separate violation." *Id.* As the Second Circuit has explained, "[a] violation of § 605(e)(4) occurs upon the distribution of a descrambler with knowledge (or reason to know) that the [descrambler] is primarily of assistance in the unauthorized decryption of satellite cable programming, or is intended for any other activity prohibited by [section 605(a)]." *Sykes II,* 75 F.3d at 133. "Thus, the act of distribution for either of the above purposes incurs the heavier penalties provided by § 605(e)(3)(C)(i)(II), while the subsequent

act of interception (or assistance in interception) is a violation of the third sentence of § 605(a) and incurs the lesser penalties provided by § 605(e)(3)(C)(i)(II)." *Id.* Taking the aforementioned allegations of Cablevision's complaint as true and crediting Mr. Patrick's testimony, as the court does, and reasonable inferences therefrom, as discussed below, Smith has also violated 47 U.S.C. § 605(e)(4).

### D. Damages and Attorneys' Fees

■ This leaves the issue of damages. Pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), Cablevision seeks the maximum statutory damages of $10,000 pursuant for one violation of either 47 U.S.C. § 553(a)(1) or 47 U.S.C. § 605(a) and $15,000 for each violation of 47 U.S.C. § 605(e)(4) through the sale of 19 decoder devices. While both sections 553(a) and 605 allow the aggrieved party to elect to recover either actual damages and lost profits, or statutory damages, 47 U.S.C. § 605 contains a more severe statutory damages provision. *See* 47 U.S.C. §§ 553(c)(3)(A)(ii) & 605(e)(3)(C)(i)(II). Statutory damages for a violation of § 553(a) may be awarded "in a sum of not less than $250 or more than $10,000 as the court considers just," while statutory damages for a violation of section 605(a) may be awarded "in a sum not less than $1,000 or more than $10,000, as the court considers just" and statutory penalties "for each violation of [section 605(e)(4) ] involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000." *Compare* 47 U.S.C. § 553(c)(3)(A)(ii) *with* 47 U.S.C. § 605(e)(3)(C)(i).

■ The Second Circuit has held that a plaintiff can receive damages under only one of the two sections even when both sections apply. *See Sykes II,* 75 F.3d at 129. The two statutes provide for different measures of statutory damages, as was outlined by the court in *International Cablevision, Inc. v. Sykes,* 997 F.2d 998, 1007 (2d Cir.1993) (*"Sykes I "*):

> The principal substantive difference between the two enforcement schemes, for purposes of the present case, lie in (a) the minimum levels of statutory damages that must be awarded, and (b) the respective provisions for attorneys' fees . . . . Whereas for a violation of § 553(a)(1), the minimum damages awardable to an aggrieved person if the violator of that section was not aware and had no reason to believe that his acts constituted a violation is set at $100, the minimum damages awardable to an aggrieved person if the violator of § 605 was not aware and had no reason to believe that his acts constituted a violation of § 605 is set at $250, *see* 47 U.S.C. § 605(e)(3)(C)(iii). More importantly, whereas under § 553 the minimum statutory damages to be awarded against an aware violator is $250, under § 605 the minimum award against an aware violator is $1,000 for a violation of § 605(a) and $10,000 for a violation of § 605(e)(4), *see id.* § 605(e)(3)(C)(i)(II). Further, the minimum statutory award of $250 under §. 553 is for "all violations involved in the action," *id.* § 553(c)(3)(A)(ii), whereas the minima of $1,000 and $10,000 for violations of § 605(a) and § 605(e)(4), respectively, are to be awarded for "each violation" of the pertinent subsection, *id.* § 605(e)(3)(C)(i)(II).

(citations omitted). The Second Circuit has held that, for violations of both sections 553 and 605, an aggrieved cable operator is entitled to elect to recover damages under section 605 because section 605 authorizes higher damages awards than those provided for under section 553. *See Sykes II,* 75 F.3d at 127; *Sykes I,* 997 F.2d at 1007; *Barnes,* 13 F.Supp.2d at 548.

Accordingly, it is well settled that where a defendant is found to have violated both statutes, the court should award damages pursuant to the more severe statutory damages provisions of 47 U.S.C. § 605. *See Sykes I,* 997 F.2d at 1007; *see also Time Warner Cable of N.Y. City v. Taco Rapido Restaurant,* 988 F.Supp. 107, 110 (E.D.N.Y.1997).

■ The specific amount of statutory damages assessed pursuant to section 605 rests within the sound discretion of the court. *Home Box Office v. Champs of New Haven, Inc.,* 837 F.Supp. 480, 484 (D.Conn.1993). Mr. Patrick testified at the hearing on damages that, according to Cablevision's records, the highest level of service for which Smith paid and was authorized to receive was optimum cable service plus Home Box Office, with a charge of approximately $50 per month. However, Cablevision obtained records from Ultimate Mail Order Services and learned through those records that Smith had purchased 20 "pirate" descrambling devices from Ultimate Mail Order Services between June and September 1995. Mr. Patrick further testified that the devices Smith had purchased would allow Smith or another user to descramble and receive, without payment or authorization, all of Cablevision's programming, including its premium and pay-per-view services.

Mr. Patrick testified that the value of the full range of Cablevision's premium programming is $76 per month and that the cost of subscribing to all of Cablevision's pay-per-view programming each month would amount to an average of $394 per month. Mr. Patrick also testified that the useful life of these "pirate" devices ranges from seven to ten years and that these devices have no purpose other than to steal cable television programming by defeating a cable company signal scrambling security systems. Mr. Patrick also

testified that Smith was only authorized for Cablevision's services for one television in his home and that only one decoder device is required per television set.

Cablevision argued at the hearing on damages that the court should infer that Smith used only one "pirate" decoder device in his own home from June 1995 to the filing of the complaint in this case in December 1999. Cablevision also argued that the court should take account of the fact that Smith would have access to $394 worth of pay-per-view programming per month plus $76 worth of premium cable programming, for a total of $420 worth of programming above what Smith was authorized to receive. Aggregating this unauthorized value over 53 months, Cablevision argues that Smith received unauthorized programming which would cost a subscriber well over $10,000 to receive, such that, due to Smith's theft of these programming services, the court should impose the statutory maximum penalty of $10,000.

In light of Cablevision's allegations that: (1) Smith has willfully and intentionally violated 47 U.S.C. §§ 553(a) and 605(a); and (2) notwithstanding notice of the action, Smith has wholly failed to appear and given that the court may draw an inference of willfulness from Smith's failure to appear and defend the action, *see Olmo,* 977 F.Supp. at 589, the court will exercise its discretion to award statutory damages in the amount of $5,000 under section 605(e)(3)(C)(i)(II) against Smith for his violation of 47 U.S.C. § 605(a). An award of statutory damages in this amount is appropriate due to (1) Smith's clear violation of 47 U.S.C. §§ 553 and 605; (2) Cablevision's allegations regarding willfulness; (3) the fact that actual damages cannot be determined, *see, e.g.,* Affirmation in Support of Motion for Default Judgment Against Defendant Thomas Smith (Docket

No. 10) at ¶¶ 7, 11; and (4) Smith's failure to offer any defense or evidence in mitigation. The court also recognizes that Cablevision has alleged that Smith received not only a single decoder but has also engaged in separate, repeated violations of sections 553 or 605. Thus, on balance, the court finds $5,000 in damages appropriate, due in part to the allegation that Smith violated sections 553 and 605 over a long period of time. *See Home Box Office*, 837 F.Supp. at 484 (considering whether, *inter alia*, there are "allegations of repeated violations over an extended period of time" and "of substantial unlawful monetary gains by the defendants").

■ Cablevision also asks the court to infer that Smith sold or distributed the remaining 19 decoders that he purchased from Ultimate Mail Order Services between June and September 1995. Cablevision argues that this inference is reasonable because only one decoder is required per television, because Smith was authorized for Cablevision's programming on only one television in his home, because each decoder has a useful life of seven to ten years without modification, and because it is unreasonable to infer that Smith obtained and employed 19 "pirate" devices for his own personal use. Upon the defendant's default, the plaintiff is "entitled to all reasonable inferences from the evidence offered." *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir.1981). The court concludes that it is a reasonable inference, from the facts listed above, that Smith sold or distributed 19 of the 20 decoders he received from Ultimate Mail Order Services, excluding the one decoder that Cablevision argues that Smith employed for personal use. The court further finds that it is a reasonable inference from Smith's failure to appear and defend the action and from the sheer number of devices he purchased that Smith effected

"the distribution of [ ] descrambler[s] with knowledge (or reason to know) that the [descramblers are] primarily of assistance in the unauthorized decryption of satellite cable programming.'" *Sykes II*, 75 F.3d at 133.

Smith is liable for damages in the amount of $10,000 to $100,000 per violation of section 605(e)(4), *i.e.*, per device sold or distributed. Cablevision requests statutory damages of $15,000 per violation. Although the court recognizes the seriousness of Smith's violations, *see, e.g., Storer Cable*, 819 F.Supp. at 596, the court declines to exercise its discretion to award Cablevision damages beyond the statutory minimum of $10,000 per violation.

Accordingly, the court assesses damages of $5,000 for Smith's violation of section 605(a) and $190,000 for Smith's violation of section 605(e)(4). The court thus awards Cablevision statutory damages totaling $195,000 pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II).

■ Cablevision also seeks injunctive relief against Smith to prevent him from receiving Cablevision's cable television programming without Cablevision's authorization or, *inter alia*, possessing, using, selling, or distributing "pirate" decoder devices capable of unscrambling Cablevision's programming without Cablevision's authorization. Complaint (Dkt. No. 1) at 14–15. Cablevision rather frankly admitted at the inquest hearing that it wants an order of the court preventing Smith from future violations of 47 U.S.C. §§ 553(a) and 605 in order to expose Smith to contempt sanction for future violations.

The court "may issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction. The first condition is met in this case

because injunctions are available remedies under sections 553(c)(2)(A) and 605(e)(3)(B)(i) of the Cable Communications Act ...." *Main Events/Monitor Prods. v. Batista,* No. 96–CV–5089, 1998 WL 760330, at *1 (E.D.N.Y. Aug. 26, 1998). A further prerequisite to injunctive relief, however, is a showing that the plaintiff will suffer irreparable harm in the absence of injunctive relief. *Wright v. Giuliani,* 230 F.3d 543, 547 (2d Cir.2000). "Irreparable harm is injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages.'" *Forest City Daly Housing, Inc. v. Town of N. Hempstead,* 175 F.3d 144, 153 (2d Cir. 1999) (quoting *Rodriguez v. DeBuono,* 162 F.3d 56, 61 (2d Cir.1998) (per curiam)). Here, Cablevision has not made a showing that it will suffer any irreparable harm absent an injunction against Smith. The court cannot be certain whether Smith continues to harm Cablevision through violations of sections 553(a) and 605, and such violation can, of course, as here, be remedied by an award of monetary damages, either actual or statutory. Accordingly, Cablevision's request for injunctive relief is denied.

With respect to Cablevision's claim for recovery of attorneys' fees, 47 U.S.C. § 605(e)(3)(B)(iii) mandates a court to award to a prevailing aggrieved party the costs and reasonable attorneys' fees that it incurred in prosecuting its claims to judgment. Cablevision has documented $2,881 in attorneys' fees through the affidavit and oral representation of Attorney Millman. The court finds that the hourly rate and the time spent are both reasonable. As such, the court will award $2,881 in attorneys' fees pursuant to 47 U.S.C. § 605(e)(3)(B)(iii).

## III. CONCLUSION

Based on the record, and for the foregoing reasons, Cablevision's Motion for De-

fault Judgment against Thomas Smith [Docket No. 9] is hereby GRANTED. Judgment shall enter in favor of Cablevision for statutory damages, pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), against Smith in the total amount of $195,000, and for an award of attorneys' fees, pursuant to 47 U.S.C. § 605(e)(3)(B)(iii), in the amount of $2,881.

**SO ORDERED.**