**CHARTER COMMUNICATIONS ENTERTAINMENT I, LLC d/b/a Charter Communications of Western Connecticut**

v.

**Wilbert SHAW.**

**No. 301CV650 (JBA).**

United States District Court, D. Connecticut.

Aug. 30, 2001.

parties did not provide any further argument on costs in the supplemental briefing.

and for a grant of relief as specified in the statute. Specifically, Charter seeks statutory damages in the amount of $10,000 (the maximum allowed) for violation of 47 U.S.C. § 605(a), attorneys' fees and costs of $2,465.10 for its prosecution of this action, and an injunction enjoining future violations of § 605(a). *See* 47 U.S.C. §§ 605(e)(3)(C)(i)(II) (statutory damages), 605(e)(3)(B)(iii) (attorneys' fees and costs), and 605(e)(3)(B)(i) (injunctive relief).

Laura K. Norden, Murtha Cullina LLP, New Haven, CT, for plaintiff.

### ENDORSEMENT ORDER [DOC. # 5]

ARTERTON, District Judge.

This is an action by Charter Communications Entertainment I, LLC ("Charter"), a cable operator, against Wilbert Shaw for damages based on Shaw's unauthorized interception of cable television services in violation of 47 U.S.C. §§ 553(a) and 605(a).[1]

Shaw failed to appear and defend this action despite the fact that a summons and complaint were served on April 24, 2001, pursuant to Rules 4(c) and 4(e) of the Federal Rules of Civil Procedure. Default was entered on June 13, 2001. Shaw has taken no action to re-open the default or otherwise plead, nor has there been any motion to extend time. Accordingly, Charter has moved for a judgment of default

### I. Default

■ "It is well established that a party is not entitled to a default judgment as of right; rather[,] the entry of a default judgment is entrusted to the sound judicial discretion of the court." *Cablevision of S. Conn. Ltd. Pship. v. Smith*, 141 F.Supp.2d 277, 281 (D.Conn.2001), *quoting Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2nd Cir.1999) (internal quotations omitted). "The dispositions of motions for entries of defaults and default judgments and relief from the same under Rule 55(c) are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2nd Cir.1993).

In its complaint in this action, Charter alleged that it is a licensed provider of cable services (¶ 6), and that its signals are

---

1. Charter has alleged violations of both 47 U.S.C. § 553 and 47 U.S.C. § 605, and has pled facts adequate to support a judgment under either section. *See International Cablevision, Inc. v. Sykes*, 75 F.3d 123, 130 (2nd Cir.1996) (both §§ 553 and 605 cover the interception of cable programming transmitted over a cable network). *But see United States v. Norris*, 88 F.3d 462, 469 (7th Cir. 1996) ("The only plausible, consistent interpretation of [§ 605] is that Congress intended for § 605 to apply to the interception of cable programming transmitted through the air,

while it intended for § 553 to apply to the unlawful interception of cable programming while it is actually being transmitted over a cable system."); *see also Prostar v. Massachi*, 239 F.3d 669, 673 n. 23 (5th Cir.2001) (noting circuit split created by the inconsistent holdings in *Sykes* and *Norris* ). Inasmuch as this is a default judgment and Charter has pled facts adequate to support liability under either section, the Court in this case will assess damages under the more severe provisions of § 605. *See Time Warner Cable v. Olmo*, 977 F.Supp. 585, 589 (E.D.N.Y.1997).

private communications not intended for unauthorized use, are offered over a cable system and constitute "satellite cable programming" (¶ 10). The signals are scrambled and must be electronically decoded by electronic decoding equipment (¶ 11). Charter provides subscribers with electronic decoding equipment, known as converters (¶ 12). Charter's converters only allow customers to decode programming in the level of service that he or she purchased (¶ 13).

■ In support of its motion for a default judgment, Charter submitted the affidavit of Robert N. Hancock, II, a quality control supervisor at Charter. The affidavit stated that Shaw subscribed to and was authorized to receive premium programing services from Charter from October 1999 through October 2000, and noted that on August 15, 2000, Shaw ordered a pay-per-view movie. Hancock further described Charter's implementation of an electronic counter-measure that identified and disabled converters that were altered to allow for unauthorized reception, and noted that after this counter-measure, Shaw returned his converter to Charter on October 31, 2000. Shaw's converter was found to have been altered with a theft device known as a "chip."

According to the complaint, modification of a converter in this fashion enabled Shaw to defeat the scrambling feature of Charter's cable systems, and allowed him to receive programming for which he had not paid (Compl.¶ 19).

In civil cases where a party fails to respond after notice, a court is ordinarily justified in entering a judgment against the defaulting party, and the court has considerable latitude in deciding whether to require the plaintiff to produce evidence in support of the claims before entering such a judgment. *Bermudez v. Reid*, 733 F.2d 18, 21 (2nd Cir.1984); *see* Fed. R.Civ.P. 55(b)(2).

In light of the pleadings in this action, the affidavits submitted in favor of Charter's motion and the lack of response by Shaw, and considering that the grounds for default are clearly established in this case, the Court finds that Charter is entitled to an entry of default judgment against Shaw for violation of 47 U.S.C. § 605(a).

II. Damages

■ The amount of statutory damages under § 605(e)(3)(C)(i)(II) for a violation of § 605(a) is "a sum of not less than $1,000 or more than $10,000, as the court considers just."

In support of its request for the maximum statutory damages of $10,000, Charter divined a $16,901.85 "projected loss" of revenue from the defendant's unauthorized receipt of pay-per-view services. This figure is based on the assumption that Shaw "siphoned" programming for the full year and consumed, *each month*, 300 movies, 30 adult programming events and 3 special events. If Charter's "estimate" is right, Shaw has likely accomplished the much-sought-after task of finding more than twenty-four hours in a single day: watching ten movies each day would exhaust close to twenty hours, and he would still have to find time for thirty adult programs (shown only after 10 P.M.) and 3 "special events" per month. Adding to the incomparability of this supposed feat is the fact that Shaw would likely be watching the same ten or twelve movies thirty times each month, because there simply are not that many new pay-per-view movies shown each month.

While it is not possible to know exactly how many movies Shaw viewed illegally, the Court considers a "reasonable assessment of actual use by a private violator"—

as opposed to a commercial violator or the compulsive television addict posited in Charter's affidavit—and will bear in mind that "time and taste would limit the actual viewing" by Shaw. *Time Warner Cable v. Barbosa*, No. 98 Civ. 3522(JSM)(RLE), 2001 WL 118608, *5 n. 1 (S.D.N.Y. Jan. 2, 2001). The fact that Shaw was a paying subscriber to Charter's monthly premium cable service indicates that he had access to a wide variety of other programming choices.

In exercising its discretion, the Court further notes that Shaw paid for a pay-per-view movie in August 2000, from which the Court draws the inference that Shaw may not have installed the chip or availed himself unlawfully of it prior to this date, because it would be somewhat counterintuitive to assume Shaw paid for that which he had access to for free. *Time Warner Cable v. Fland*, No. 97 Civ. 7197(BSJ)(SEG), 1999 WL 1489144, *3 (S.D.N.Y. Dec. 3, 1999) (drawing a "reasonable inference" that illegally modified converter was used for the first time when defendant changed his level of programming down to basic service from a higher level of service). Thus, the Court considers that the defendant may have "siphoned" programming without paying for as few as ten weeks, and not necessarily the full 12 month period suggested by Charter. *Barbosa*, 2001 WL 118608, at *5 (when awarding damages, the statutory goals of § 605(a) are served by taking into account the approximate duration of any violation).

Another factor bearing on the justness and appropriateness of the fine imposed is whether or not the chip device has been turned over to Charter or is still in circulation, being used to steal service from Charter or another provider. *See Community Television Sys., Inc. v. Caruso*, 134 F.Supp.2d 455, 460 (D.Conn.2000)

(maximum statutory damages were appropriate for users of descramblers who had advanced frivolous positions as to liability at trial and had never disclosed the whereabouts of the descramblers); *Charter Communications Entm't I LP v. Ramos*, No. 3:97cv1573 (CFD), slip op. at 2 (D.Conn. June 18, 1998) (statutory damages of $1,500 for user of descrambler who readily returned his converters and attended a meeting with plaintiff's attorneys). Here, Shaw's device has been returned to Charter and is thus out of service.

In light of the forgoing considerations, the Court concludes that an award of statutory damages in the amount of $1,500 is just and appropriate under these circumstances.

### III. Attorneys' Fees and Costs

█ Charter also requests reasonable attorneys' fees and costs in the amount of $2,465.10 for prosecution of this action. *See* 47 U.S.C. § 605(e)(3)(B)(iii). In support of its request for this amount, Charter submits the affidavit of Attorney Burton B. Cohen, which sets out the contemporaneously maintained time and task records for work performed, avers that the rates charged are the firm's standard fees for 2001, and documents costs of $199.60 (a $150 filing fee and a $49.60 State Marshal service fee). Relying on its knowledge of legal fees in Connecticut, *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1058–1059 (2nd Cir.1989), the Court finds the fees and costs reasonable both as to hourly rate and the amount of time spent on the identified tasks and finds that an award of attorneys' fees and costs is appropriate in this case.

### IV. Injunctive Relief

█ Finally, Charter asks for a permanent injunction enjoining future viola-

tions of 47 U.S.C. § 605(a) by Shaw. While injunctions on a motion for default judgment are authorized under 47 U.S.C. § 605(e)(3)(B)(i) for violation of § 605, the moving party must show that it meets the prerequisites for the issuance of an injunction, including irreparable harm; an injunction will not simply be issued as a matter of course. *See Smith*, 141 F.Supp.2d at 287–288 (no injunction issued in default judgment case when moving party admitted the only reason it sought an injunction was to expose defendant to contempt sanctions for future violations); *Main Events/Monitor Prods. v. Batista*, No. 96–CV–5089, 1998 WL 760330, *1 (E.D.N.Y.1998) (no injunction issued in default judgment case when moving party failed to show irreparable harm).

■ "Irreparable harm is injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *Smith*, 141 F.Supp.2d at 288, *quoting Forest City Daly Hous., Inc. v. Town of N. Hempstead*, 175 F.3d 144, 153 (2nd Cir. 1999) (internal quotations omitted). Charter has made no allegation that Shaw used more than one "descrammbler" chip, that he was using the chip for commercial gain or that he has ever in the past used such a chip. Further, by Charter's own account the chip has been recovered and is no longer in Shaw's possession. Finally, Charter has an adequate remedy at law for money damages should Shaw violate § 605(a) in the future. In these circumstances, injunctive relief is inappropriate.

V. Conclusion

Plaintiff's Motion for Judgment of Default Against Defendant Wilbert Shaw [doc. # 5] is GRANTED IN PART AND DENIED IN PART. Judgment shall enter in favor of the plaintiff and against the defendant as to liability under 47 U.S.C.

§ 605(a), and judgment shall enter in the amount of $3,965.10, which includes attorneys' fees and costs. Insofar as the motion asks for a greater award of statutory damages or for injunctive relief, it is DENIED.

IT IS SO ORDERED.